MABEL O. HENDERSON v. CITY OF SAINT PAUL.[1]

November 19, 1943.

No. 33,580.

[1]Reported in 11 N. W. (2d) 791.

*Harry W. Oehler,* Corporation Counsel, and *Ira Karon,* Assistant Corporation Counsel, for appellant.

*Samuel A. Anderson* and *Albert M. Kueffner,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendant appeals from an order overruling its general demurrer to the complaint. The court certified the question presented thereby to be important and doubtful.

The facts alleged may be thus summarized:

St. Paul is a duly incorporated city and as such maintains a public street, known as Summit avenue, extending in an easterly and westerly direction; "that certain portions of said street have two lanes of travel, one for eastbound, the other for westbound, traffic, said lanes being divided by parkways; that each of said lanes is about 25 feet in width; that one of said portions of said street is intersected by a street known as Syndicate street; that at a point about one-half block east of said intersection there is a parkway located directly in front of said eastbound lane, which lane there curves sharply to the left and thence to the right around the west end of said parkway; that because of said location of said parkway there is at night the ever present grave danger of drivers of eastbound automobiles approaching said parkway and not seeing said parkway and said curve in time to avoid running into and upon said parkway in the absence of a proper reflector or other adequate means of warning of the necessity of making said left turn, all to the full knowledge of defendant."

And, further, that—

"it became and was the duty of defendant to guard against said danger by having an adequate contrivance properly located" so as to warn "automobile drivers of said danger"; that "solely because of said failure on the part of defendant to have a proper reflector" or other adequate warning sign, plaintiff, who was a passenger in an automobile driven by her husband, was injured when the automobile was driven upon the parkway and struck a tree.

■ It has long been the established rule in this state, so as to become a fundamental one in our jurisdiction, that a city is under legal obligation to exercise reasonable care to keep and maintain its streets in a safe condition for public use. McCarthy v. City of St. Paul, 201 Minn. 276, 278, 276 N. W. 1. The cases are collected in 26 Minn. L. Rev. 485, note 375.

■ The question here is whether the facts pleaded show that this duty was violated. There is no allegation of any defect in that portion of the street improved and being used for public travel.

Plaintiff's only claim is that there exists an "ever present grave danger" by reason of the fact that the street curves to the left and then to the right around a parkway without an indication of the presence of such curves by a proper reflector or other adequate warning sign.

While no similar case has arisen in this state, decisions from other jurisdictions point the way to solution here. In Waldorf v. City of Alhambra, 6 Cal. App. (2d) 522, 45 P. (2d) 207 (review denied by supreme court), which also arose on the pleadings, it was held that the complaint did not state facts sufficient to impose actionable liability upon the city for the death of a passenger in an automobile which, after crossing an intersection, collided at night with a pole in a parkway at a point where the street became narrower by some 14 feet, and where it was alleged that such narrowness, combined with the absence of any warning signs, constituted a defective condition of the street. The court there said (6 Cal. App. [2d] 526, 45 P. [2d] 209):

"* * * Nor do we think that the city is chargeable with liability in failing to maintain barriers, lights or warning signs or notices at the point of 'offset' or 'jog' in the street. In almost every city of size in this state some streets are laid out and improved without uniformity as to width or direction, resulting in so-called 'jogs', 'offsets' or 'goosenecks', some ending at cross-streets and some even forming cul-de-sacs. We are convinced that the law does not require a municipality to maintain either barriers or warning devices at 'jogs' or 'offsets' of the construction, nature and appearance of that described in the complaint herein."

The court goes on to say that to a prudent driver of an automobile at night the pavement, curb, and a parkway with trees or poles on it constitute sufficient warning to avert disaster where there is nothing to conceal the real condition or deceive the operator of an approaching automobile while driving at a lawful rate of speed and with due caution.

Another case similar in its facts is Clinkenbeard v. City of St. Joseph, 321 Mo. 71, 10 S. W. (2d) 54, 62, 61 A. L. R. 242, 255, where

the court in pointing out that "jogs," "goosenecks," and "cul-de-sacs" are of frequent existence in all cities, goes on to say: "To judicially say that, at every such place, a municipality must maintain some barrier or warning device, is more than we think the law requires." Helpful, too, are Greenland v. City of Des Moines, 206 Iowa 1298, 221 N. W. 953; Payne v. Kansas G. & E. Co. 138 Kan. 434, 26 P. (2d) 255; and 7 McQuillin, Mun. Corp. (2 ed.) p. 128, § 2957.

We think the above cases state the correct rule applicable to the situation we have here. Merely because a street turns or jogs around a parkway does not place a duty on the city to erect and maintain warning signs or lights. Such irregularities in streets are so common that the burden of providing warning lights or signs in all such instances and in all municipalities would be disproportionate to the probable danger likely to be encountered by the ordinarily prudent automobile driver.

■ A different situation is presented if by reason of peculiar facts or circumstances a pitfall, trap, or snare dangerous to the wayfarer is created. That exception is well illustrated in the recent case of Ollgaard v. City of Marshall, 208 Minn. 384, 294 N. W. 228, where our prior cases are cited. The pitfall or trap need not necessarily be on or in the traveled portion of the street. It is sufficient if it is near enough to make the street itself unsafe for travel. Such cases as Miller v. City of Duluth, 134 Minn. 418, 159 N. W. 960, and Ray v. City of St. Paul, 40 Minn. 458, 42 N. W. 297, illustrate this exception to the general rule. Thus, in the Ray case, the complaint alleged that the city had allowed refuse to accumulate at the end of a street which terminated at the river so that this deposit appeared to be a prolongation of the street. Plaintiff was injured when he fell while walking on this deposit, supposing it to be a part of the street. There we held the complaint sufficient to state a cause of action. So in Weiser v. City of St. Paul, 86 Minn. 26, 90 N. W. 8, the city's negligence was predicated upon its permitting a wooden culvert, running into a ravine, to so remain that it appeared to be a continuation of the sidewalk. Sim-

ilarly, in Ollgaard v. City of Marshall, 208 Minn. 384, 386, 294 N. W. 228, 229, we held that where an abandoned street ran into a river where there formerly had been a bridge and the approach was such as to give the street the appearance of a continuing thoroughfare, liability was properly imposed, because the city owed "some duty in respect to not leaving the abandoned part in the shape of a pitfall or trap to wayfarers. And that was the theory upon which the case was submitted to the jury."

In the case at bar no such peculiar facts or circumstances are alleged, the only claim being that neither plaintiff nor her husband knew or realized that their automobile was approaching a parkway until it was too late to avoid driving upon it. Liability, therefore, is predicated upon the theory that the parkway as laid out and maintained created an "ever present danger" to automobile traffic because the street turns to the left and then to the right around a parkway. The mere allegation that there is "danger" has for its basis only the facts giving rise to the alleged danger. The term is a conclusion of the pleader and adds nothing to the facts. Our duty is to look at the facts upon which the conclusion is based. We hold that the facts here alleged do not show a situation justifying the application of the doctrine of pitfalls or traps.

■ While plaintiff has pleaded "that it became and was the duty of defendant to guard against said danger," we think this, too, is a conclusion of law and need not be considered further. Heron v. St. P. M. & M. Ry. Co. 68 Minn. 542, 547, 71 N. W. 706; 5 Dunnell, Dig. & Supp. § 7542, and cases in note 48. As we have shown, the facts pleaded do not disclose the existence of such duty; hence there could be no breach of duty.

Order reversed.

Mr. Justice Loring, absent because of accidental injuries, took no part in the consideration or decision of this case.