# ARTHUR J. MIX AND ANOTHER v. CITY OF MINNEAPOLIS AND OTHERS.[1]

March 16, 1945.

No. 33,853.

[1]Reported in 18 N. W. (2d) 130.

*Alfred R. Sundberg,* for appellants.

*Paul J. Thompson* and *Abbott L. Fletcher,* for respondent City of Minneapolis.

*Freeman, King & Geer,* for respondent Standard Construction Company, Inc.

*Snyder, Gale, Hoke, Richards & Janes,* for respondent Percy Mc-Gowan, individually and doing business as Percy McGowan Construction Company.

MATSON, JUSTICE.

Two actions in negligence in the district court for Hennepin county, consolidated for trial and heard together on appeal, were brought against the city of Minneapolis, Standard Construction Company, Inc., and Percy McGowan, individually and doing business as Percy McGowan Construction Company, by Arthur J. Mix, as father and natural guardian of Arthur J. Mix, Jr., a minor, and by Arthur J. Mix, in his own behalf, to recover for personal injuries sustained by said minor and for damage to the father's automobile. Plaintiffs separately appeal from orders denying their alternative motions for judgment or a new trial. The motion of each defendant for a directed verdict was based on the ground that plaintiffs had failed to prove any actionable negligence.

The accident occurred in the north portion of the area now occupied by the U. S. Naval Air Station at Wold-Chamberlain Field. On December 12, 1941, the city of Minneapolis, within the limits of which the north area was then located, vacated that portion of Forty-second avenue lying therein south of Fifty-ninth street, and on February 4, 1942, through action of its park board, surrendered and delivered to the federal government, for use as a naval air station, the exclusive control and possession of the area lying south

of a line located 91 feet south of and parallel to Fifty-ninth street. Delivery of possession to the Navy was made pursuant to an agreement for the transfer of title to the federal government as soon as the necessary legal steps could be completed. Although the bare legal title to the area remained in the city up to and including the time of the accident, no right of entry thereto or control thereof remained in the city.

Upon taking possession, the Navy commenced to improve and enlarge the air station runways and employed defendant Standard Construction Company, Inc. as the general contractor, and this company in turn sublet the bulk excavation work to the defendant Percy McGowan. When the accident occurred, the excavation work was under way, and already the excavation covered an area of several blocks with its north 25- or 30-foot embankment located about 175 feet south of the terminus of the unvacated portion of Forty-second avenue and about 85 feet, more or less, south and outside of the territory controlled by the city.

On April 14, 1942, Arthur J. Mix, Jr., accompanied by a friend, drove his father's automobile to the airport to keep a 2:00 p. m. appointment to inquire about enlistment in the air corps. He arrived too early for the appointment and, to kill time, drove along Forty-second avenue south to find a parking space. He drove south across the Fifty-ninth street intersection and along the vacated portion of Forty-second avenue up to the crest of a hill, where the car hurtled over the unguarded embankment. The automobile was damaged, and plaintiff was injured.

■ A motion for a directed verdict on the ground of contributory negligence as a matter of law raises a question of law only and admits, for the purpose of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence, and the view of the evidence most favorable to the adversary must be accepted. Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377; Reiton v. St. Paul City Ry. Co. 206 Minn. 216, 288 N. W. 155; Merchants & F. Mut. Cas. Co. v. St. Paul-Mercury Ind. Co. 214 Minn. 544, 8 N. W. (2d) 827;

Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694; Knudson v. G. N. Ry. Co. 114 Minn. 244, 130 N. W. 994; 6 Dunnell, Dig. & Supp. § 9764.

■ Taking the evidence in the light most favorable to the plaintiff (Mix, Jr.), we find that, accompanied by his friend Barquist, he drove in broad daylight along Forty-second avenue, crossed its intersection with Fifty-ninth street, and then proceeded for a distance of about 175 feet beyond to the edge of the excavation, where his car plunged 25 or 30 feet downward. In climbing the hill between the intersection and the drop off, he shifted to second gear and was going only about 10 miles per hour. For about 60 feet south of Fifty-ninth street, Forty-second avenue, as vacated, was covered with tarvia, and beyond the tarvia it extended straight ahead with a sand or dirt surface. There were no road barriers, signs, or guards to warn plaintiff of any danger. He had an unobstructed view straight ahead after crossing Fifty-ninth street, with the single exception that he claimed he could not see over the top of the hill he was climbing and which leveled off for only a few feet just short of the edge of the excavation. Plaintiff and three other witnesses testified to the existence of the hill and gave various estimates of its height. Mix, Sr. said the rise from Fifty-ninth street to the top at the edge of the cliff was 15 or 20 feet. Barquist gave the rise from the foot of the hill to its crest as about nine feet. Both plaintiff and Barquist said the road had a lot of tire tracks, indicating recent use. The automobile was in good mechanical condition, and plaintiff was in excellent health and was keeping his eyes on the road. His testimony that he could not see over the crest of the hill and that he had no forewarning until the front wheels of the car dropped over the edge is corroborated by Barquist, Mix, Sr., and one Swenson. The latter testified that between the intersection and the embankment there is a "fooling view" and that he, as a pedestrian, 5 feet 8 inches tall, could see nothing of the excavation until he was about 40 feet or less from the edge.

Taking into consideration the steepness of the incline; the presence of tire tracks indicating recent travel by others; the fact that this portion of the street had been vacated only a few months and that there was no physical change in the roadbed thereof to serve as a warning to travelers that it was no longer in use (Hanson v. Town of Clinton, 156 Wis. 147, 145 N. W. 646); and the fact that plaintiff was seated in an automobile, can it be said that his contributory negligence was not a fact issue for the jury? If there had been no incline in the road to obstruct plaintiff's vision, a clear case of contributory negligence as a matter of law would be presented. If the road had been level but the accident had taken place at night, plaintiff's negligence would have been a question of fact for the jury. Ollgaard v. City of Marshall, 208 Minn. 384, 294 N. W. 228. And see, Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881, where the charge to the jury, to which no exceptions were taken, became the law of the case. Reasonably, the hazardous element supplied by darkness can also be supplied by the hazard of an incline or hill which, even in daylight, might so obstruct or limit a motorist's vision of the road ahead as to convert what would otherwise be contributory negligence as a matter of law into a question of fact for the jury. Here, the lower court erred in not submitting the issue of contributory negligence to the jury. For a similar case involving the issue of contributory negligence and the inability of a motorist in daylight to see beyond the crest of a precipitous hill, see City of Seminole v. Mooring, 185 Okl. 359, 91 P. (2d) 1091, the facts of which are hereinafter summarized.

Although the trial court here directed verdicts for defendants on the sole ground of plaintiff's contributory negligence and although its finding of such negligence as a matter of law has not been sustained, nevertheless, the order directing the verdicts should be upheld as to any defendant if, upon an examination of the record, there is nothing to sustain a finding of negligence. Blomberg v. Trupukka, 210 Minn. 523, 299 N. W. 11. We proceed to the issue of negligence.

■ The contention of the city of Minneapolis of no negligence on its part is based largely on the fact that it had no control over the premises where the accident actually occurred. The Navy assumed exclusive control of the area long prior to the accident. The bare legal title, which remained in the city at the time, is of no significance and will be ignored. The accident occurred approximately 175 feet beyond the south edge of Fifty-ninth street (the terminus of that part of Forty-second avenue which had not been vacated) and, for all intents and purposes of this case, about 85 feet beyond the city limits.

The evidence already recited herein under the issue of contributory negligence indicates that the street or roadway led up an incline of sufficient steepness to justify a jury in finding that plaintiff's view of the sudden danger ahead had thereby been so obscured that, in the exercise of the reasonable care of the average motorist (in the light of the surrounding circumstances involving the absence of any barricades or warning signs of danger, coupled with the presence of tire marks indicating use by others and the fact of comparatively recent vacation of the street), he had driven unwarned to the very brink of danger until it was too late to avoid the downward crash. The rule is well established, under the prior decisions of this court, that if, by reason of peculiar facts or circumstances, a pitfall, trap, or snare dangerous to a traveler proceeding with reasonable care is created in respect to a street, a municipality owes a duty to exercise reasonable care to warn or otherwise protect such traveler from the resulting danger. Ollgaard v. City of Marshall, 208 Minn. 384, 294 N. W. 228. See, also, Henderson v. City of St. Paul, 216 Minn. 122, 126, 11 N. W. (2d) 791, 793, where this court said: "The pitfall or trap need not necessarily be on or in the traveled portion of the street. It is sufficient if it is near enough to make the street itself unsafe for travel"; and City of St. Paul v. Kuby, 8 Minn. 125 (154), and Weiser v. City of St. Paul, 86 Minn. 26, 90 N. W. 8. The same principle applies although the dangerous pitfall or trap is located at the end instead of alongside the street. Ray v. City of St. Paul,

40 Minn. 458, 42 N. W. 297. In the Ollgaard case, it was held that where a street, abandoned for over 20 years but not vacated, ran into a river over which a bridge had once been located, and the approaches gave the street the appearance of a continuing thoroughfare, liability was properly imposed, because the city owed (208 Minn. 386, 294 N. W. 229) "some duty in respect to not leaving the abandoned part in the shape of a pitfall or trap to wayfarers."

In determining whether a defect or dangerous place is in such close proximity to the street as to render travel upon it unsafe, the true test is not the exact location of the defect or excavation or its distance from the street, but its dangerous character, and whether a traveler, in passing along the highway and in the exercise of ordinary care, would be subject to such imminent danger as to require the erection by the municipality of suitable barriers or signs to make the street reasonably safe. 5 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 3258; Crogan v. Schiele, 53 Conn. 186, 1 A. 899, 5 A. 673, 55 Am. R. 88; City of Beaumont v. Kane (Tex. Civ. App.) 33 S. W. (2d) 234; City of Seminole v. Mooring, 185 Okl. 359, 91 P. (2d) 1091; Barnes v. Inhabitants of Chicopee, 138 Mass. 67, 52 Am. R. 259.

In the instant case, the accident at the brink of the excavation was about 85 feet outside the city limits or beyond the area controlled by the city. Is the situation changed by the fact that the excavation is located wholly outside the city limits where the city has no control? We think not. While the city has no authority to make changes outside its limits, it does owe a duty to the traveling public to make its streets reasonably safe, *and such streets are within its limits and under its control* (even though the excavation is located outside its corporate limits) and are subject to the erection of suitable signs or barriers where necessary to make them reasonably safe for the traveling public.

"It is a general rule of law that a city is not liable for injuries which occur outside of the city limits. This rule, however, like others, has its exceptions under certain circumstances, and we

think the facts of this case bring it within the exceptions to the rule." Williams v. City of Mexico, 224 Mo. App. 1224, 1227, 34 S. W. (2d) 992, 994. See, also, City of Seminole v. Mooring, *infra*.

■ Circumstances may exist justifying a jury in finding that a city has been guilty of negligence in failing to erect and maintain suitable signs or barriers at the end of a street within its limits. This would be especially true where the street, as in this case, had been vacated as to a portion, and the vacated portion extended beyond the street terminus proper, and also beyond the city limits, as an open invitation to the motorist to proceed to the very edge of a pitfall or trap. The vacation of a street does not of itself convey a warning to the traveler where the condition of the road-bed continues unchanged. "If a highway is discontinued or altered, it is the duty of the municipality to erect and maintain suitable signals or barriers to warn travelers of the fact" (9-10 Huddy, Cyc. of Auto. Law [9 ed.] § 228, p. 360); and, "In the absence of any-thing to the contrary, travelers have a right to assume that a high-way that appears to be open and used for public travel has not been discontinued" and is reasonably safe for travel. Bills v. Town of Kaukauna, 94 Wis. 310, 314, 68 N. W. 992, 993; Hanson v. Town of Clinton, 156 Wis. 147, 145 N. W. 646; Raymond v. Sauk County, 167 Wis. 125, 166 N. W. 29, L. R. A. 1918F, 425; Williams v. City of Mexico, 224 Mo. App. 1224, 34 S. W. (2d) 992. See, also, Oll-gaard v. City of Marshall, 208 Minn. 384, 294 N. W. 228.

In City of Seminole v. Mooring, 185 Okl. 359, 91 P. (2d) 1091, we have a similar case. There, the motorist, unaware of any im-pending danger and not having the benefit of any warning signals or barriers, was proceeding in broad daylight along a city street with his vision obstructed only by the brow of a hill which he was ascending in second gear and which prevented him from seeing that the roadway terminated abruptly with a precipice just beyond the hilltop. His car plunged over this precipice down a 15- or 20-foot embankment. The embankment or point of the accident was approximately 18 feet outside the city limits. The plaintiff's con-

tributory negligence was an issue in the trial. The defendant city appealed to the supreme court from an order denying its motion for a new trial on the grounds that the evidence was insufficient against a demurrer thereto, that a verdict should have been directed for the city, and that, under the law and the evidence, the court should have refused to enter judgment upon the verdict in favor of the plaintiff. The supreme court held that the issue of the city's negligence had been properly left to the jury.

The evidence here indicates that the city, long prior to the accident, had knowledge of the extensive operations undertaken in expanding the Naval Air Station facilities in the area which had been transferred to the federal government for this express purpose; in fact, it was in furtherance of this purpose that a portion of Forty-second avenue was vacated. The excavation was already extensive at the time of the accident, indicating that the work on it had been under way for a considerable time. Through the exercise of reasonable care and diligence in the inspection of its streets, the city should have known that a dangerous pitfall or trap had been created just beyond the terminus of one of its streets, the vacated portion of which remained as a justifiable and open invitation to the traveler. Under all the circumstances, the issue of the city's negligence presented a fact question for the jury, and we so hold.

■ ■ " The defendant McGowan, to establish lack of negligence, advances the proposition that neither the Navy nor he owed any duty to plaintiff as a trespasser upon Navy property, citing Restatement, Torts, § 383, as follows:

"One who does an act or carries on an activity upon land on behalf of the possessor thereof, is subject to the same liability, and enjoys the same immunity from liability, for bodily harm caused thereby to others within and outside the land as though he were the possessor of the land.

\* \* \* \* \*

"Comment b. \* \* \* The chief importance of the rule stated in this Section is to indicate that the one acting on behalf of the pos-

sessor is given the same immunity from liability to trespassers as is conferred upon the possessor."

The above section should be construed in conjunction with § 334, reading as follows:

"A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety."

This latter section is in point. A jury could reasonably find upon the evidence that McGowan, from the facts within his knowledge, should have known that motorists as a class would both constantly and unwittingly trespass upon that limited area of the premises represented by the vacated portion of Forty-second avenue. The habit or practice of motorists, as well as others, of using a public street does not automatically cease as to a vacated portion when that portion remains unchanged, open, and unobstructed. Under all the circumstances, there is a question of fact as to whether McGowan was under a duty to erect suitable signs or barriers across the roadway represented by the vacated portion of Forty-second avenue which led to the very brink of the excavation.

"Many, if not the majority of jurisdictions hold that: if there has been intrusion sufficiently habitual to make its repetition not merely possible but probable, upon a definite area, by a class sufficiently numerous to make the danger substantial, the public interest in the preservation of its most valuable asset, the life and limbs of its members, requires the owner to forego his privilege to consider only the safety of those to whom he throws open his land, and demands that he shall refrain from doing, without notice, acts outside of his ordinary and normal use of his land, which create new and concealed dangers thereon." Bohlen, "Duty of a Landowner, etc." (1921), 69 Pa. L. Rev. 142, 251; Harper, Law of Torts, § 92; and see, also, 4 Dunnell, Supp. § 6986.

The negligence issue as to the defendant McGowan should have been left to the jury.

■ The evidence establishes as to the defendant Standard Construction Company nothing more than the bare fact that it was the general contractor for the enlargement of the Naval Air Station under a contract with the United States government, and that, in turn, it had given a subcontract to the defendant Percy McGowan for the excavation work. No contract was introduced in evidence to indicate the relationship between the general contractor and its subcontractor. There is nothing to show that the Standard company retained or had any control or right of supervision over the excavation area or over its subcontractor in the performance of his work. Nothing appears in the record to show that the Standard company had any right to possession of any part of the premises while the excavation work was in progress.

In Aldritt v. Gillette-Herzog Mfg. Co. 85 Minn. 206, 207, 88 N. W. 741, 742, this court held:

"The liability of one person for the negligent acts and omissions of another rests upon the relation of superior and subordinate, as master and servant, and the consequent control which the superior has over the acts of the subordinate in the performance of his duties. There can be no liability, therefore, unless such relation and such right of control exist, either by force of the contract between the parties, or the duty to assume control is imposed, as a matter of law, by reason of some peculiar relation the person for whom the work is being performed bears to third persons with respect to the time, place, and manner of performance. It was said in Rait v. New England F. & C. Co. 66 Minn. 76, 68 N. W. 729, that the question whether the doctrine of respondeat superior applies to any particular case depends upon the question whether the original contractor had control of and the right to direct the subcontractor as to time, place, and manner of performing the work; and this question must be determined from the contract between the parties in the light of surrounding circumstances. If he had such control

and right of direction, he is liable for the negligence of the subcontractor, and cannot absolve himself from such liabilities on the claim of independent relation."

Obviously, a general contractor is not liable for the negligent acts and omissions of his subcontractor unless the right of the former to control or supervise the latter as to time, place, and manner of performing the work exists by force of the contract between them, as interpreted in the light of all the surrounding circumstances, or unless the duty to assume such control and supervision is imposed, as a matter of law, by reason of some peculiar relation which the person for whom the work is being performed bears to third persons as to the time, place, or manner of performance. See, also, Klages v. Gillette-Herzog Mfg. Co. 86 Minn. 458, 90 N. W. 1116; Harper, Law of Torts, § 292; Restatement, Torts, § 414. There was no evidence upon which a finding of negligence could be made against Standard company, and we hold that as to this defendant the order of the trial court should be affirmed.

The orders appealed from are reversed as to the defendants city of Minneapolis and Percy McGowan and affirmed as to the defendant Standard Construction Company.