KATHRYN P. LARSON, TRUSTEE FOR HEIRS OF MERLYN
W. LARSON, v. TOWNSHIP OF NEW HAVEN AND
ANOTHER.
TOWNSHIP OF PINE ISLAND, APPELLANT.

165 N. W. (2d) 543.

February 21, 1969—No. 41174.

448

*Thomas J. Battis* and *Murnane, Murnane, Battis & deLambert,* for appellant.

*Roger Sahr, Clarence Schlehuber,* and *West & Gowan,* for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

OTIS, JUSTICE.

Defendant township of Pine Island appeals from an order denying judgment n. o. v. or a new trial in an action for death by wrongful act. The jury awarded plaintiff a verdict of $25,000. The action was predicated on defendant's failure properly to maintain a warning sign at the approach to a T-intersection which plaintiff alleges caused the death of decedent when he was unable to negotiate the corner, went off the highway, and was thrown from his vehicle as it overturned.

The issues which require our consideration are (1) whether the verdict is supported by the evidence; (2) whether the court erred in denying defendant's requested instruction that plaintiff must prove the intersection was a pitfall, trap, or snare; and (3) whether the court erred in failing to charge the jury that plaintiff must prove defendant had notice the warning sign was not in place.

■ There were no eyewitnesses to the accident. Most of the evidence was circumstantial. At the time of the accident on May 22, 1964, decedent, Merlyn W. Larson, was employed as a truckdriver by a farmer near Zumbrota, Minnesota. On the previous evening he had loaded a double-deck livestock trailer with approximately 125 hogs, averaging in weight about 250 pounds. At 1 o'clock in the morning he left for Milwaukee, Wisconsin, driving south on a Pine Island township road, intending to reach U. S. Highway No. 52. Apparently Mr. Larson had been advised that he could see Highway No. 52 from the township road although they did not connect, and was told he would have to take another road to reach that highway.

The Pine Island road was 18 feet in width and unpaved. It terminated and formed a "T" at a New Haven township road, 22 feet in width, about a quarter of a mile from U. S. Highway No. 52. The approach to the T-intersection was hilly. Lights and traffic on Highway No. 52 could be seen when cars were a considerable distance north of the intersection. It is agreed that on the night of the accident there was no sign or other warning that a T-intersection lay ahead.

When the accident was discovered the next morning, the tractor-trailer had overshot the intersection, run down a 3-foot bank, broken off a utility pole, and turned over on its left side, facing in a westerly direc-

tion. Decedent was found some 10 feet in front of his cab. There appeared to be no skid marks across the intersection.

In this state of the record, defendant argues that the jury could not properly reconstruct the accident and decide whether it was proximately caused by the township's failure to warn approaching vehicles of the hazardous intersection. The township contends that the evidence does not permit an inference that decedent was unaware of the intersection, or that a sign would have prevented the accident, and that the circumstances do not preclude an equally plausible inference that decedent was traveling too fast, without his lights on high beam, and that the accident occurred because he was inattentive and did not properly apply his brakes. We do not agree. The combination of circumstances recited justified a finding that decedent was traveling on an unfamiliar road in the dark of night with a heavy load and, because he had no warning, the nature of the terrain gave him no reason to believe that the road would abruptly end without affording him an opportunity to slow down and make the turn. The road on which he was traveling appeared to continue to Highway No. 52, which was brightly lighted, and it was not until a traveler was almost at the intersection that it was possible to determine the road ended in a sloping bank leading into a field.

Plaintiff's position is fortified by the presumption of due care on the part of decedent conferred by Minn. St. 602.04.[1] From the facts recited we hold that a jury could find that the township's failure to post a warning was a proximate cause of decedent's death and that he himself was free from contributory negligence.

■ Defendant requested the following instructions, which the court refused:

"A township has a duty to warn travelers upon its roads, by posting

---

[1] Minn. St. 602.04 provides: "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

signs, if by reason of peculiar facts or circumstances, a pit fall, trap or snare dangerous to a traveler proceeding with reasonable care is created in respect to a road.

\* \* \* \* \* \*

"If you find that the 'T' intersection involved in this case did not constitute a pit fall, trap, or snare, then neither township had a duty to post any signs (and in that event, you should return a verdict for both townships).

\* \* \* \* \* \*

"If on the other hand, you find the 'T' intersection did constitute a pit fall, trap or snare, then you have to decide whether either township gave adequate warning to a traveler, such as the plaintiff. If you find adequate warning should have been given, you still must find that the lack of such warning was the proximate cause of this accident."

Instead, the court charged the jury that defendant's liability depended on whether defendant had complied with Minn. St. 169.06, subd. 3, which provides as follows:

"Local authorities in their respective jurisdictions shall place and maintain such traffic-control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances, or to regulate, warn, or guide traffic. All such traffic-control devices hereafter erected shall conform to the state manual and specifications."

The court went on to amplify the application of the statute with the following instruction:

"\* \* \* This statute gives to those defendants the right and the duty to determine whether or not and where traffic control devices, that is, signs, should be erected. In exercising this right and performing this duty the townships must exercise reasonable care. In substance that means that the duly constituted and elected or appointed officials of the townships must do what a person of ordinary care and prudence would do in fulfilling this obligation. If they did not in this case exercise that degree of care then under the evidence that you have heard here if you find that

they have not exercised that degree of care then you should find that they have been negligent."

While we would be better satisfied if the court had further elaborated on the law with respect to the necessity for warning signs, we cannot say the instruction was wholly inadequate or misleading. The rule which has emerged from our decisions is [2] "that if, by reason of peculiar facts or circumstances, a pitfall, trap, or snare dangerous to a traveler proceeding with reasonable care is created in respect to a street, a municipality owes a duty to exercise reasonable care to warn or otherwise protect such traveler from the resulting danger." Mix v. City of Minneapolis, 219 Minn. 389, 395, 18 N. W. (2d) 130, 134.

Webster's Third New International Dictionary (1961) p. 1725, defines pitfall as "a hidden or not easily recognized danger, error, or source of injury or destruction into which one that is unsuspecting or incautious may fall." A trap is defined as "something by which one is unsuspectingly or deceptively caught or stopped in an action or progress." Id. p. 2431. Among other definitions of snare is "*often*: something deceptively attractive: a misleading lure." Id. p. 2155. The expression "pitfall, trap, or snare" as used in our opinions is merely shorthand for saying that liability in these situations is predicated on the existence of conditions which to a reasonably prudent driver may be fatally deceptive. It would have better served the jury had the court expanded his charge by spelling out the conditions which in these circumstances give rise to an issue of liability. It is therefore with some hesitation that we affirm. However, the facts concerning the conditions on the night of the accident were fully explored by both parties, and it would be unrealistic to assume that the issues were not sharply brought into focus by the arguments of counsel. Certainly the jury had before it the question of whether the T-intersection was deceptively dangerous so as to require a warning sign in compliance with § 169.06, subd. 3. The fact that for

---

[2] Wilson v. City of Montevideo, 196 Minn. 532, 265 N. W. 438; Ollgaard v. City of Marshall, 208 Minn. 384, 386, 294 N. W. 228, 229; Henderson v. City of St. Paul, 216 Minn. 122, 126, 11 N. W. (2d) 791, 793; Christenson v. Village of Hibbing, 219 Minn. 141, 16 N. W. (2d) 881; Mix v. City of Minneapolis, 219 Minn. 389, 18 N. W. (2d) 130.

many years such a sign had been intermittently placed and replaced at the approach to the intersection was an acknowledgment by the township that a warning was required. Considered as a whole, we are not persuaded that the charge denied defendant its right to a decision which considered its theory of defense. The case was tried on a negligence theory and that was the manner in which it was submitted to the jury. We do not believe the jury was unaware of the elements which constituted the cause of action, notwithstanding the abbreviated manner in which the instructions were given.

■ On the question of notice that the warning sign was not in place, the court refused to give the following instructions requested by the township:

"I charge you that the evidence discloses no actual knowledge by the township that the sign was down. In order for the Pine Island Township to have constructive knowledge that the sign was down, the plaintiff has to prove that the sign was down for such a period of time that this would have been discovered by a reasonable inspection of the township road."

In a memorandum accompanying its order denying a new trial, the court stated:

"* * * The evidence, we believe, would sustain a finding as a matter of law that the Township of Pine Island had actual notice of these facts and failed to act. As a matter of law there is no evidence from which the jury could find any excuse or justification for this failure to act."

The applicable rule is set forth in Instruction 362, Minnesota Jury Instruction Guides, as follows:

"A * * * municipality has no duty to give warning of or remedy defects in its streets * * * unless it has actual knowledge or constructive notice of such defects.

"There is constructive notice if a defect existed for such a length of time that the municipality in the use of reasonable care should have discovered the same.

"If a municipality actually knows or has constructive notice of a defect, it is not negligent regarding any harm resulting therefrom unless such actual knowledge or constructive notice existed for such a period of

time as would reasonably afford the municipality an opportunity to give warning or remedy the same."

Such an instruction is supported by our decisions in Ljungberg v. Village of North Mankato, 87 Minn. 484, 92 N. W. 401; Kleopfert v. City of Minneapolis, 93 Minn. 118, 100 N. W. 669; Fuller v. City of Mankato, 248 Minn. 342, 80 N. W. (2d) 9; and Hall v. City of Anoka, 260 Minn. 188, 109 N. W. (2d) 319. Notice is ordinarily a jury question. The court would have been well advised to have submitted it to the jury in the case at hand. However, the rule stated is not applicable where the municipality's employees have actual notice of the defect or it is one which they created. Kleopfert v. City of Minneapolis, *supra*; McDonald v. City of Duluth, 93 Minn. 206, 100 N. W. 1102; 19 McQuillin, Municipal Corporations (3 ed. 1967 Rev. Vol.) § 54.104; Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 480, 518.

Although the question is a close one the testimony bearing on the issue of notice is not actually in dispute. A number of witnesses testified with respect to how the warning sign was maintained. A summary of their evidence compels a finding that in 1956 a yellow sign with a black "T" was posted some 180 feet north of the intersection. Apparently it had been knocked down by a snowplow operated by the township. There were bullet holes through the sign. Various employees of the township had from time to time found the sign on the ground and had attempted to reattach it to its metal post. Some witnesses said that the sign had been knocked off and put up again on numerous occasions. One witness testified that within 2 or 3 weeks of the accident he saw that the sign was down and hung it back on the post with wire run through a hole in the bottom of the sign, attaching the top by inserting a bolt in the post through a bullet hole. Other witnesses testified that the sign had been down for extended periods of time without being replaced.

On the morning following the accident, a photographer and deputy sheriff found the sign on the ground, covered with grass and dirt. Strands of grass clung to the sign when it was picked up.

Where, as here, it is undisputed that employees of the township had actual notice that the warning sign had not been in place for a long pe-

riod of time and had taken wholly ineffective measures to render it secure, we hold that the township was not prejudiced by the court's failure to submit to the jury the issue of notice.

■ We have considered the other issues raised by defendant: The court's failure to charge the jury concerning the applicability of § 169.60(1); the court's refusal to permit defendant to show the financial interest of decedent's employer or grant leave to cross-examine him; the introduction into evidence of posed moving pictures; and the question of venue. These issues have not been pressed at oral argument and are very largely matters coming within the broad discretion of the trial court.

Affirmed.