David Cyril OSTENDORF, Appellant,

v.

Jenise Mary KENYON, Respondent,

State of Minnesota, defendant and third party plaintiff, Respondent,

The Horseshoe Bar, third party defendant, Respondent,

and

Mary Ellen OSTENDORF, formerly Mary Ellen Klampe, Appellant,

v.

Jenise M. KENYON, defendant and third party plaintiff, Respondent,

State of Minnesota, defendant and third party plaintiff, Respondent,

David Ostendorf, third party defendant, Appellant,

and

Jenise M. KENYON, Respondent,

v.

John HILL, d.b.a. the Horseshoe Bar, Respondent,

Western Casualty & Surety Company, Defendant.

No. C9-83-1677.

Court of Appeals of Minnesota.

May 1, 1984.

Robert E. Schmidt, Waseca, for appellant David Cyril Ostendorf.

William L. Hoversten, Waseca, for Mary Ellen Ostendorf.

Ross Muir, Rochester, John C. Hottinger, Mankato, for Jenise Mary Kenyon.

William H. Manning, St. Paul, for State of Minn.

John H. McLoone IV, Waseca, for The Horseshoe Bar and John Hill d.b.a. the Horseshoe Bar.

Charles T. Hyass, Jr., Minneapolis, for amicus curiae Trial Lawyers Ass'n.

Heard by FOLEY, P.J., WOZNIAK and SEDGWICK, JJ. Considered and decided en banc: POPOVICH, C.J., and PARKER, FOLEY, WOZNIAK, SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

David Ostendorf and Mary Ostendorf sued a number of parties, including the State of Minnesota, concerning a traffic accident. After discovery, the State moved for a partial summary judgment dismissing it from the suit because the design of highways, including signing and striping, is a discretionary act and the state has discretionary immunity. The trial judge granted the motion and dismissed the State. On September 27, 1983, the trial judge certified the partial summary judgment appealable in a modified order. The Ostendorfs appeal. We affirm in part and reverse and remand in part.

## FACTS

At approximately 10:30 P.M. on May 12, 1979, David Ostendorf and Mary Klampe (now Mary Ostendorf) left the Horseshoe Bar in Waseca to go to the Playmate Lounge two miles west of Waseca on Minnesota State Highway 14. The Ostendorfs drove a three-wheel motorcycle. About the same time, Jenise Kenyon left the Playmate Lounge in her car to go back to Waseca on Highway 14. Neither the Ostendorfs nor Kenyon arrived at their destinations. They collided head-on somewhere outside of Waseca.

The stretch of Highway 14 where the accident occurred has three lanes: two westbound and one eastbound. A double yellow line separates the westbound lanes from the eastbound lane. The traffic signs on Highway 14 were located in compliance with the Manual on Uniform Traffic Control Devices (MUTCD), an attempt to standardize traffic signs across the country. This scheme was adopted by statute. Minn.Stat. § 169.06(1) (1982).

According to the trial court, the Ostendorfs' only substantiated allegations are that the State failed to properly warn the public about the hazards of this road through signs on the road and warnings in the Minnesota Driver's Manual. The State claims sovereign immunity as a defense.

## ISSUE

Does sovereign immunity bar the appellants' suit against the State?

## ANALYSIS

■ Summary judgment is proper under the Minnesota Rules of Civil Procedure when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to judgment as a matter of law.

Minn.R.Civ.P. 56.03. Facts shall be viewed in the light most favorable to the non-moving party. In such instances, the sole question before the court is whether an issue of established material fact exists. *Bennett v. Storz Broadcasting Co.*, 270 Minn. 525, 531, 134 N.W.2d 892, 897 (1965). If sovereign immunity bars the plaintiff's lawsuit, the State would be entitled to judgment as a matter of law and summary judgment would be proper.

The Minnesota Supreme Court prospectively abolished absolute sovereign immunity in 1975 for claims arising after August 1, 1976. *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975). The Supreme Court noted, however, that they in no way intended a complete abolition of the concept:

we are only indicating our disfavor of the immunity rule in the tort area, and our decision should not be interpreted as imposing liability on any governmental body in the exercise of discretionary

functions or legislative, judicial, quasi-legislative and quasi-judicial function. *Id.,* at 131, 235 N.W.2d at 603. The *Nieting* decision was applied prospectively to allow the legislature time to enact a tort claims act.

■ The legislature responded. Act of April 20, 1976, ch. 331, § 33, 1976 Minn. Laws 1282, 1293 (now codified at Minn. Stat. § 3.736 (1982)). As a general rule, the State will pay compensation for claims if a private person would be liable for the same type of claim. Minn.Stat. § 3.736(1) (1982). A non-exclusive list of exclusions, among them a discretionary acts exclusion, is included. *Id.* § 3.736(2). The discretionary acts exclusion prohibits recovery for "any loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." *Id.* Similar discretionary acts exclusions can be found in the Minnesota Municipal Tort Claims Act, Minn.Stat. § 466.03(6) (1982), and the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1976).

■ The purpose of the discretionary acts exclusion is that:

the courts, through the vehicle of a negligence action, are not an appropriate forum to review and second guess the acts of government which involve "the exercise of judgment or discretion."

*Cairl v. State,* 323 N.W.2d 20, 23 (Minn. 1982); *see also,* Restatement (Second) Torts § 895D comment f (1979). In general, courts distinguish acts which are discretionary and immune from acts which are ministerial and not immune. This distinction creates the illusion of a clear cut standard. In reality, however, the distinction is a spectrum rather than a standard. As William Prosser noted:

[i]t seems almost impossible to draw any clear and definite line, since the distinction, if it exists, can be at most one of degree. It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail.

W. Prosser, A Handbook on the Law of Torts § 132 at 990 (4th ed. 1971). Recognizing the difficulty of applying a standard without clear distinctions, the Minnesota Supreme Court has noted that the exclusion has been "subject to enigmatic application and occasional breakdown." *Larson v. Independent School Dist. No. 314,* 289 N.W.2d 112 (Minn.1979); *Papenhausen v. Schoen,* 268 N.W.2d 565, 571 (Minn.1978).

■ A discretionary act is one which requires a balancing of complex and competing factors at the planning, rather than the operational, stage of development. *Larson v. Independent School Dist. No. 314,* 289 N.W.2d 112 (Minn.1979); *Williamson v. Cain,* 310 Minn. 59, 245 N.W.2d 242 (1976). A ministerial act has been defined as "absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed designated facts." *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937). At some point, according to the Minnesota Supreme Court, discretion is exhausted and duty arises. *Cairl v. State,* 323 N.W.2d 20, 23 (Minn. 1982).

■ The Ostendorfs claim that the State failed to adequately warn the public about the dangers of that stretch of road, first, by not adequately explaining the meaning of a double yellow line in the Minnesota Driver's Manual, and second, by not putting more warning signs on the road. When writing the manual, state officials had to decide what to put in, what to leave out: what would be uninformatively too little information and what would be confusingly too much information. This is a classic case of state officials balancing complex and competing factors in the planning stages of development. Claims against the State concerning the information placed in the driver's manual are, therefore, barred as a discretionary act.

■ Complying with the MUTCD alone is not enough to exempt the State from liability. As part of its duty to maintain highways, the State must repair or warn drivers of dangerous situations. The chief way to warn of such a situation is by

placing additional or more explicit signs on the road. Since the "commissioner may construct and maintain other directional signs upon the trunk highways," Minn. Stat. § 169.06(2) (1982), the legislature apparently contemplated that at some point in the operation and maintenance of a highway, it would become apparent that additional signs were needed. That is the point where the discretion in how to originally place warning signs is exhausted and, as part of maintaining the highway, the State has a duty to erect more or better signs.

Here, the plaintiffs introduced evidence that Highway 14 had a history of accidents and that the State failed in its duty to safely maintain the highway by not placing better or additional warning signs on this stretch of road. The plaintiffs have, therefore, raised a material issue of fact as to whether the State had a duty to place more or better warning signs on the highway.

### DECISION

The State's publication of a driver's manual was a discretionary act and the state is immune from suit when it complies with the manual.

The State's placement of warning signs on the highway was not a discretionary act after the State had knowledge of a dangerous situation where warning could be provided by additional or better signs. Here the appellants raised an issue of material fact as to whether the state was negligent in the maintenance of its highway and summary judgment was not appropriate.

Affirmed in part; reversed in part and remanded for trial.