Gerald **HOLMQUIST**, Appellant,

v.

**STATE of Minnesota**, Respondent.

No. CX–86–2206.

Court of Appeals of Minnesota.

July 14, 1987.

Review Granted Sept. 23, 1987.

Debra J. Heisick, Donohue, Rajkowski, Hansmeier, Grunke & Jovanovich, Ltd., St. Cloud, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Mary A. Bernard, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by POPOVICH, C.J., and HUSPENI and MULALLY,* JJ.

## OPINION

HUSPENI, Judge.

Appellant, Gerald Holmquist, brought suit against the State of Minnesota to recover for injuries he received in a motor vehicle accident allegedly caused by the State's failure to warn of a dangerous condition on a highway. The trial court granted the State's motion for summary judgment concluding that because the State had no notice of the dangerous condition, it had no duty to warn. On appeal, Holmquist argues that the trial court erred in its determination that because the State had no notice of a dangerous condition, it was entitled to discretionary immunity. Holmquist also argues that the State is not entitled to discretionary immunity if the State itself has created the dangerous condition. Finally, Holmquist claims that the dangerous condition was the result of faulty construction. We reverse and remand for trial.

## FACTS

Sometime after 11:00 p.m. on September 3, 1983, Gerald Holmquist was driving his truck westbound on Highway 95 in Benton County, Minnesota. The weather conditions were foggy and rainy, and visibility was limited. Holmquist had just crossed the bridge over the St. Francis River when he attempted to pull his truck onto the shoulder of the road. He soon discovered there was not an adequate shoulder to accommodate his truck, but when he attempted to pull the truck back on to the road-

---

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

way, the truck's tires caught on the edge of the pavement causing the truck to roll down a steep embankment.

The width of the shoulders along Highway 95 varies. East of the St. Francis River bridge the shoulders are four to five feet wide and smoothly graded with gentle ditch slopes. West of the bridge, however, the shoulders are approximately one and one-half feet wide with steep ditch slopes. In addition, there is a drop of three to five inches at the edge of the shoulder. There is no sign indicating that the shoulder narrows.

The State moved for summary judgment, contending that the placement of signs on a highway is a discretionary function immune from liability. The State submitted the affidavit of Kenneth Olson, the Engineer of Operations for the Minnesota Department of Transportation. Olson stated in part:

Nothing in either the MUTCD [Manual of Uniform Traffic Control Devices] or the MMUTCD [Minnesota Manual of Uniform Traffic Control Devices] suggests that any type of signs [is] necessary when the shoulders of a road become more narrow. There are hundreds, perhaps thousands, of such places on Minnesota roads. If such a sign were placed, it would be an exercise of discretion by the District Traffic Engineer. My own opinion is that the sign suggested by [appellant's] engineer would be inappropriate for a number of reasons. A "no shoulder" sign placed where there are narrow shoulders is not accurate and might mislead drivers. Further, hundreds or even thousands of signs would need to be placed in order to ensure uniformity. It is already evident to drivers that the shoulders are narrow, without the need for signs.

\*　　\*　　\*　　\*　　\*　　\*

I have reviewed the attached accident records, which are for the mile west of the point where the road narrows just prior to [appellant's] (westbound) accident. There is only one accident on that mile of road during the five years prior to [appellant's] accident, which is a very low accident rate. It involved a motorist who hit an animal in a construction site due to reduced visibility. A traffic engineer would not place a "no shoulders" sign on a road due to such an accident.

Holmquist also presented expert evidence in an affidavit from Jack Anderson, a traffic engineering consultant. Anderson stated:

5. That it is your affiant's professional opinion based on his experience, training and based on his observations of the accident scene that the dramatic change from wide shoulders and gradual sloping ditches to virtually no shoulder and a sudden steep ditch creates a pit-fall or a trap for a motorist. It is further your affiant's opinion that this change in the roadway is dangerous and that the traveling public should be warned of it. This danger is compounded by the fact that there is a drop of three to five inches at the edge of the pavement. Because of this drop-off, a driver whose wheel drops over the edge of the surfaced portion of the road is not likely to recover.

6. That it is your affiant's opinion that this situation is hazardous and that a good and reasonable engineering practice would require a warning sign to apprise the public of the existence of these hazards.

7. That based on your affiant's experience and based on your affiant's own observations, your affiant knows that No Shoulder signs are used on the state highway system in these type of situations.

8. An example of this exists on Trunk Highway 200, just east of its junction with Trunk Highway 71 in northern Minnesota. That attached to this Affidavit are photographs of No Shoulder signs in that area. That it is precisely this type of sign which I would recommend be placed on Highway 95 in the area of the bridge over the St. Francis River.

9. That the need for such signs on Highway 95 is actually more compelling than the need shown in the area where the pictures were taken. That this is because the change from wide shoulders

to no shoulders is less visible on Highway 95 because it is somewhat camouflaged by the existence of the bridge.

The trial court granted the State's motion for summary judgment noting in its memorandum:

> As part of its duty to maintain highways, the State must warn drivers of dangerous situations. The chief way to warn of such a situation is by placing additional or more explicit signs on the road. This duty to warn is modified by the requirement that the State must be on notice, actual or constructive, of a dangerous situation or condition. * * *
>
> In *Ostendorf* [*v. Kenyon,* 347 N.W.2d 834 (Minn.Ct.App.1984)] the Plaintiff introduced evidence that Highway 14 had a history of accidents and that the State failed in its duty to safely maintain the highway by not placing better or additional warning signs on that stretch of Highway 14 where the accident occurred. In the instant case, [appellant] has made no such showing and in fact the records of the Minnesota Highway Department disclose that on this stretch of Highway 95 there has only been one accident during the five years previous to the accident, and that accident involved a collision with an animal due to reduced visibility in a construction zone. It is therefore apparent that even if the shoulders were more narrow (at the point on Highway 95 where the accident occurred) than they had been previously and/or that the pavement had a drop off (from the pavement to the shoulder) of three to five inches that the State did not have a duty to warn of these conditions by signing unless it was on notice, actual or constructive, of such condition. Since the State had no such prior knowledge and [appellant] has not and apparently can not produce such evidence the State was under no duty to warn and summary judgment in favor of the State is therefore appropriate.

## ISSUE

Did the trial court err in granting summary judgment for the State on the grounds that it had no notice of a dangerous condition?

## ANALYSIS

On appeal from a grant of summary judgment, this court determines: (1) whether there are any genuine issues of material fact and (2) whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The facts are viewed in the light most favorable to the nonmoving party.

Minn.Stat. § 3.736, subd. 1 provides that:

> The state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant.

This provision is limited, however, by section 3.736, subd. 3(b) which provides the State and its employees are not liable for "Any loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Under these laws, the first question to be addressed when the State is sued for allegedly tortious conduct is whether the conduct complained of constitutes a ministerial act subject to liability or a discretionary act immune from liability.

In *Williamson v. Cain,* 310 Minn. 59, 245 N.W.2d 242 (1976), the supreme court recognized that characterizing conduct as ministerial or discretionary is not any easy task because the distinction "is a nebulous and difficult one." *Id.* at 61, 245 N.W.2d at 244. Similarly in *Ostendorf v. Kenyon,* 347 N.W.2d 834 (Minn.Ct.App.1984) this court, after setting forth a thorough history of discretionary act immunity, noted that "the distinction [between a ministerial act and a discretionary one] is a spectrum rather than a standard." *Id.* at 837. Clearly the distinction between a discretionary act and a ministerial act "can be at most one of degree." W. Prosser, *A Handbook on the Law of Torts* § 132 at 990 (4th Ed. 1971).

When determining where on the spectrum certain conduct falls, we must be mindful that:

Discretionary immunity must be narrowly construed in light of the fact that it is an exception to the general rule of governmental liability.

*Johnson v. County of Nicollet*, 387 N.W.2d 209, 211 (Minn.Ct.App.1986). In clarifying what conduct will be afforded discretionary immunity, the supreme court has applied a "planning-operational" distinction in examining the nature of the governmental act. *Cairl v. State*, 323 N.W.2d 20, 23 n. 1 (Minn.1982). A discretionary act

is one which requires a balancing of complex and competing factors at the planning, rather than the operational, stage of development.

*Ostendorf*, 347 N.W.2d at 837. In contrast, ministerial acts are those acts that are

absolute, certain and imperative involving merely the execution of a specific duty arising from fixed designated facts.

*Id.* (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W.2d 165, 167 (1937)).

Despite the existence of precedent and clarification, it remains a difficult task for trial and appellate courts to apply "a standard without clear distinctions. * * * [T]he exclusion has been 'subject to enigmatic application and occasional breakdown'." *Ostendorf* at 837 (quoting *Papenhausen v. Schoen*, 268 N.W.2d 565, 571 (Minn.1978)).

In attempting to determine where along the ministerial/discretionary continuum the facts of this matter fall, we find a review of recent case law instructive. In *Johnson*, this court stated:

In actions alleging that a governmental body failed to safely maintain roads and sidewalks, case law consistently holds that the discretionary act exception does not apply. * * * "[T]he legal duties owed by municipalities as owners and operators of buildings, roadways, or other facilities * * * are analogous to those owed by private persons, and a breach of such duties can be the basis of a lawsuit against the municipality just as it can be

the basis of a lawsuit against private tortfeasors." * * * Liability is limited, however, to those cases where the municipality has notice, actual or constructive, of the defective conditions.

387 N.W.2d at 211–12 (quoting *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 803 (Minn.1979)).

While the trial court in the present case recognized that the State had a duty to warn drivers of dangerous roadway conditions, it nonetheless granted summary judgment because it found that the State had no notice of danger, and therefore, that it could have no liability. While we agree with the trial court that there is no accident history in this case, a review of prior Minnesota case law causes us to conclude that the trial court's analysis of the issue of notice is incomplete.

In *Larson v. Township of New Haven, Olmsted County*, 282 Minn. 447, 165 N.W.2d 543 (1969), the Minnesota Supreme Court recognized the general rule that a duty to warn arises only if the municipality has actual knowledge or constructive notice of alleged roadway defects or dangerous conditions. However, the *Larson* court observed that the general rule was inapplicable if the "defect * * * is one which [the municipality] created." *Id.* at 454, 165 N.W.2d at 547. The court further stated:

The rule which has emerged from our decision is "that if, by reason of peculiar facts or circumstances, a pitfall, trap, or snare dangerous to a traveler proceeding with reasonable care is created in respect to a street, a municipality owes a duty to exercise reasonable care to warn or otherwise protect such traveler from the resulting danger." *Mix v. City of Minneapolis*, 219 Minn. 389, 395, 18 N.W.2d 130, 134 [1945].

*Id.* at 452, 165 N.W.2d at 546. Under the rationale of *Larson*, a material fact issue exists in this case. Holmquist has presented evidence through the affidavit of Jack Anderson from which a jury could find that the abrupt narrowing of the shoulder from four to five feet on one side of the St. Francis bridge to one and one-half feet

with a three to five inch drop at its edge immediately on the other side of that bridge constituted a pitfall, trap, or snare, thereby giving rise to a duty to install appropriate warning signs. Award of summary judgment was inappropriate in view of the necessity to resolve this factual issue.

Finally, we believe that the State's argument that it should be liable only for accidents that were foreseeable in the ordinary and usual use of the highway itself is without merit. *See Hellman v. Julius Kolesar Inc.*, 399 N.W.2d 654, 655 (Minn.Ct.App.1987). The State contends that pulling the car onto the shoulder was not an "ordinary use" of the highway itself. We disagree. Certainly the State could foresee that circumstances would arise where a driver would need to pull onto the shoulder of the road. Further, the alleged dangerous condition need not be directly on the traveled portion of a roadway, only near enough to create a danger. *See Mix v. City of Minneapolis*, 219 Minn. 389, 395, 18 N.W.2d 130, 134–35 (1945).

In view of the basis upon which we have determined that summary judgment was inappropriately awarded, we do not address Holmquist's argument regarding faulty construction of the highway.

### DECISION

The trial court erred in granting summary judgment for the State.

Reversed and remanded for trial.