ED WILLIAMS, RESPONDENT, v. THE CITY OF MEXICO, MISSOURI, APPELLANT.—34 S. W. (2d) 992.

St. Louis Court of Appeals. Opinion fied February 3, 1931.

*W. C. Hughes, W. W. Botts* and *Rodgers & Buffington* for appellant.

*Fry & Hollingsworth* for respondent.

NIPPER, J.—This action was instituted in the circuit court of Audrain county, Missouri. The petition is in two counts. In the first count plaintiff seeks to recover damages in the sum of $20,000 for injuries sustained by him to his person; in the second count he seeks to recover $225 for injury done to his automobile, by reason of his automobile, in which he was riding, being driven over the west stone abutment which had formerly supported the west end of a highway bridge which had spanned Salt River Creek just east of the city of Mexico. This bridge had been torn down by the State Highway Department and a new bridge erected over another road further north leading into the city of Mexico. The stone abutment over which the car was driven was located thirty-six feet east of and outside the corporate limits of the city.

Upon a trial plaintiff obtained judgment on the first count of his petition in the sum of $477, and on the second count in the sum of $75. From this judgment defendant city has appealed to this court.

The defendant is a city of the third class.

Prior to the fall of 1925, Liberty street extended eastward from South Jefferson avenue, the main north and south thoroughfare in the city of Mexico, to a point approximately 330 feet west of the east corporate limits of the city of Mexico. It then veered at an angle of twenty-five degrees in a southeasterly direction until it reached Grand avenue, a north and south street just inside the east corporate limits of the city. Crossing over Grand avenue, it then veered back northeasterly to the east corporate limits and connected with State Highway No. 22, which led on eastward out of the city. Salt River is a small stream running in a general north and south direction, and near the east corporate limits of the city of Mexico. At a point where State Highway No. 22 originally connected with East Liberty street there had been a bridge, the west approach of which was thirty-six feet east of and outside the east corporate limits of the city, whereby a continuous thoroughfare was made by way of

East Liberty street and State Highway No. 22 into and out of said city.

About a year before this accident occurred, for the purpose of eliminating the angle made at the connection of Liberty street with State Highway No. 22, this highway was re-located so as to enter the city of Mexico north of the old location, making a straight route. Liberty street was re-located so as to connect with the new highway, and a new bridge was built by the State Highway Commission about ninety feet north of the old bridge, and the old bridge was removed, leaving the foundation and approaches as they were. East Liberty street or old Liberty street was macadamized and curbed, and street lights were located along its route.

In the afternoon of May 4, 1926, the plaintiff rode in his automobile to Mexico from his home about twenty-three miles southeast of that city. Plaintiff and three other persons were in the car. They were all colored people. They came to State Highway No. 22 several miles east of Mexico, and entered the city of Mexico by way of this State highway, and crossed over the new bridge and proceeded westward over Liberty street as re-located. After entering the city of Mexico, they drove to the home of plaintiff's son. About nine o'clock P. M. of that evening all these parties got into the car and started home. Plaintiff was riding in the rear seat. Thinking they were proceeding correctly in order to cross over the bridge that they had come in on that afternoon, they followed this street to the city limits, and noticing the approach of the old bridge, they proceeded on in this automobile the additional thirty-six feet, and went over the embankment, where and at which time plaintiff received his injuries.

It also appears that the triangular piece of land made by the change in the east end of Liberty street was higher than old Liberty street, thus, to some extent, cutting off any view of new Liberty street. They were traveling about ten or fifteen miles an hour. The city of Mexico has never had or exercised any jurisdiction over the old bridge, nor has it ever spent any money thereon.

There was evidence offered on the part of the defendant to the effect that the new bridge was plainly visible from the point where plaintiff was traveling, and that owing to the street lights and the headlights on plaintiff's car, this place where the old bridge had been formerly located could be clearly seen for some distance away.

The only real question involved on this appeal is whether or not defendant city is liable for this injury which occurred outside the corporate limits.

It is a general rule of law that a city is not liable for injuries which occur outside of the city limits. This rule, however, like others, has its exceptions under certain circumstances, and we think the facts of this case bring it within the exceptions to the rule. It was the duty of the city to keep its streets in a reasonably safe condition

so that those using the streets would not be injured if they were exercising ordinary care, and it is frequently necessary for a municipality to guard against adjacent excavations and give warning and notice of any danger that might cause injury to those using said street or streets. [Fox v. City of Joplin (Mo. App.), 297 S. W. 451.] It is also the duty of a municipality to erect and maintain suitable barriers where there are dangerous places, which, without such protection, would render the street unsafe and dangerous to travelers. [Chance v. City of St. Joseph, 195 Mo. App. 1, 190 S. W. 24.]

In the case last cited, the facts were very similar to those in the instant case. It is true that in the Chance case the accident happened inside the city limits. It was held there that it was the positive duty of the city to maintain a barrier across a public street where it abruptly ends at the very edge of a precipice. While the defendant city had no power or authority to make changes outside of the city limits, it did owe the duty to the traveling public to make its streets safe. Was this a safe street? A street which continued right up to the very limits of the city and within thirty-six feet of a precipice of this kind, when it was very likely that people who were not thoroughly acquainted and familiar with the situation would probably attempt to leave the city over this street, especially as there was or had been a highway leading onto the bridge approach, was not a safe street. And while this dangerous condition was outside the city limits, it was so close thereto that it must have been apparent, or should have been, that this street where it ended at the corporate limits of the city was not safe for those exercising ordinary care in traveling upon said street. It was an invitation to continue on, and thirty-six feet is a short distance in which to stop an automobile when you have no knowledge of the dangerous situation, and may have no knowledge, even though you are exercising ordinary care, until you have gone over the embankment as plaintiff did.

Defendant relies on such cases as Griffin v. City of Chillicothe, 311 Mo. 648, 279 S. W. 84, and Stealey v. Kansas City, 179 Mo. 400, 78 S. W. 599, but we think the facts in those cases and the rules of law applied thereto have no application to the situation in this case. Plaintiff was not guilty of contributory negligence as a matter of law. This accident happened in the nighttime, and may have happened to any one else who was leaving the city under the same circumstances and conditions which existed at the time plaintiff received his injuries. Defendant could easily have guarded, or warned of, the approaching danger, and we think it was its duty to have done so.

Finding no reversible error in the record, the judgment is affirmed. *Haid, P. J.*, and *Becker, J.*, concur.