Edward J. WOOD, Jr. (Plaintiff), Appellant,

v.

Herbert HULSEY and Hubert Hulsey, d/b/a Lead Belt Freight Lines (Defendants), Respondents.

No. 29098.

St. Louis Court of Appeals.

Missouri.

Sept. 21, 1954.

Dearing & Matthes, Will B. Dearing, Hillsboro, for appellant.

Charles F. Hamilton, J. C. Jaeckel, Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondents.

HOUSER, Commissioner.

This is a personal injury action brought by Edward J. Wood, Jr. against Herbert Hulsey and Hubert Hulsey, d/b/a Lead Belt Freight Lines. Defendants filed a counterclaim for property damage. A trial jury returned a verdict for defendants upon plaintiff's petition and for defendants in the sum of $2,075 upon their counterclaim. Plaintiff has appealed from the judgment entered upon the verdict.

On July 24, 1951 at a point on State Highway 21 approximately 9 miles north of Hillsboro defendants' southbound tractor-trailer unit collided with a northbound Ford automobile driven by plaintiff, inflicting personal injury upon plaintiff and causing property damage to defendants' equipment.

Plaintiff charged defendants with negligence in omitting to operate their tractor-trailer as close as practicable to the right-hand side of the highway. Defendants filed a general denial and a counterclaim in which they charged plaintiff with excessive speed and failure to keep his vehicle as close to the right-hand side of the highway as practicable. Plaintiff's reply denied the negligence charged against him, and alleged that any damages sustained by defendants resulted from their failure to operate the tractor-trailer as close as practicable to the right-hand side of the highway.

Plaintiff's first point on appeal is that the trial court erred in giving Instruction No. 2, directing a verdict for defendants on the ground of contributory negligence if the jury found that as the northbound Ford operated by plaintiff and defendants' southbound tractor-trailer approached each other "plaintiff failed to drive and operate said automobile as close as practicable to his own right-hand side of the highway, in that he drove it from the east half onto the west half of the highway, * * *." It is urged that there was no evidence offered by either party tending to prove or from which the jury properly could have inferred that the collision occurred as a result of plaintiff's *driving* his automobile onto the left-hand side of the highway. Plaintiff urges that "driving" means "guiding;" that whether plaintiff's automobile came over onto the west half of the road because it was out of control due to excessive speed (as he says defendants' evidence indicated) or because of an emergency (as

he says the witness Prasse's testimony indicated), in either event the instruction is faulty because it is not supported by substantial evidence showing an *affirmative act of guiding* or driving the automobile from the northbound to the southbound lane.

There were three eyewitnesses: plaintiff, Hubert Hulsey, and Edward P. Prasse. Plaintiff testified that he was on his own side of the road at all times and denied having driven into the southbound lane of traffic. Hubert Hulsey, driver of defendants' tractor-trailer, testified that when his tractor was approximately 300 feet north of the crest of a hill he was ascending he saw plaintiff's automobile come over the hill at an estimated speed of 70 miles per hour, "and his car started kind of sliding, you might say; well, the north end of it—the south end of it would be pointed like east and the front end west, and he come across and hit me in just a split second." Mr. Prasse, driving a northbound automobile in front of plaintiff's northbound automobile, testified that he saw the oncoming tractor-trailer when he reached the crest of the hill, at which time he also observed an oncoming southbound automobile in the northbound traffic lane and along the rear of the trailer, attempting to pass defendants' equipment. Prasse pulled off the slab and onto the right-hand shoulder. His automobile passed the two southbound vehicles and then got back onto the pavement. Prasse then looked into the rear view mirror, saw the front of plaintiff's automobile, which then was west of the center line, and saw parts of plaintiff's automobile flying through the air. Plaintiff contends that under none of these three versions of the facts could the jury have found that plaintiff "drove" his automobile from the east to the west half of the highway; that under plaintiff's evidence the impact occurred in the northbound lane; that under Hulsey's testimony plaintiff's automobile was out of control due to excessive speed, sliding with its front headed west and its rear headed east; and that the only conclusion warranted from Prasse's testimony is that when plaintiff came over the crest of the hill he was faced with an emergency, with defendants' equipment occupying the west lane and another vehicle occupying the east lane, and that while the jury "may have concluded that in. such a situation Wood may have applied his brakes and that the sudden application of the brakes may have caused him to lose control of his machine" the jury could not properly have found that Wood's automobile "moved from the east side of the highway onto the west side under Wood's guidance."

This contention must be disallowed. Hubert Hulsey testified that at all times he was on the west half of the pavement and did not turn his southbound vehicle to the east. A state highway patrolman testified that at the scene of the collision he found a single, unbroken skid mark 33 feet long which started approximately at the center of the northbound lane of traffic and went at an angle onto the southbound lane, and another skid mark 36 feet long which started north of where the other mark ended and commenced approximately at the center of the southbound lane and went off the road to the left rear of the tractor, which came to rest against an embankment on the west side of the highway. This, together with the other testimony by Hulsey that plaintiff's northbound automobile, sliding sideways after coming over the hill at 70 miles per hour, came across and hit him, was sufficient evidence to support the instruction requiring a finding that plaintiff "drove" his automobile from the east to the west side of the highway. Under such circumstances, it not being controverted that plaintiff previously had been occupying the driver's seat, operating and controlling the movement and direction of the automobile, it was not necessary for the evidence to show that immediately before the collision plaintiff was still in control of the movements of the automobile in order to be found in the act of driving it. The fact that it had gone out of control shortly before the moment of impact, if that be a fact, would not operate to change the status of plaintiff as the *driver* of the automobile. If due to the negligence of plaintiff while driving on the east side of the pavement plaintiff lost control of the automobile, which then moved over onto the west side of the pavement, it.

may be said that plaintiff "drove" the automobile into the west lane. In order to establish legal responsibility for failing to drive and operate an automobile as close as practicable to the right-hand side of the highway in that the automobile crossed onto the wrong side it is not necessary to show that the offender intended to drive across the center line, or that he was in actual control of the automobile when it crossed, or that the act of crossing was his affirmative act of guiding the vehicle. It is sufficient to show that while in charge of and operating the automobile he committed an act of negligence which resulted in the automobile not continuing in its proper lane, but crossing over and onto the wrong lane.

In Phoenix Refining Co. v. Powell, Tex. Civ.App., 251 S.W.2d 892, two approaching vehicles collided when one of them (the Powell truck) crossed to its left-hand side of the highway. There was evidence that the crossing was not due to negligence on the part of the driver but resulted from a suddenly deflated tire which prevented the the driver from controlling the truck's movement. The court, in deciding that there was sufficient evidence to raise the issue of excusable violation of a statute prohibiting the driving of a motor vehicle on the left-hand side of the road, in effect sustained a jury finding that the driver of the Powell truck "drove" to his left-hand side of the pavement as he approached the point of accident, as against the contention that this finding precluded the idea that the truck was pulled or thrown to the left side by the blowout. The court said, 251 S.W.2d loc. cit. 895:

"* * * An operator attempting to control the movements of a motor vehicle which is defective in certain of its parts is commonly regarded as 'driving' the vehicle despite a failure to exercise fully effective control. 'To drive' means 'to give a forward impetus to; to propel; impel.' Shafer v. Glander, 153 Ohio St. 483, 92 N.E.2d 601, 604; Bosse v. Marye, 80 Cal.App. 109, 250 P. 693. 'The person in control of the motive power of a motor vehicle is said to be "driving" it.' Grant v. Chicago, M. & St. P. Ry. Co., 78 Mont. 97, 252 P. 382, 385, citing Commonwealth v. Crowninshield, 187 Mass. 221, 72 N.E. 963, 68 L.R.A. 245."

In Conway v. Silver King Oil & Gas Co., Mo.App., 94 S.W.2d 942, plaintiff testified that the collision between his automobile and defendant's truck occurred after plaintiff had stopped the automobile he was driving in order to allow defendant's truck to pass. Plaintiff's main instruction required a finding that plaintiff was "driving" an automobile when it was struck by defendant's truck. Rejecting the contention that there was a variance between the instruction and plaintiff's testimony, the court said, 94 S.W.2d loc. cit. 948: " * * * it is not improper, under such circumstances, to refer to one as 'driving' an automobile, even though he is momentarily stopped on the side of the road to permit another car to pass by in the opposite direction."

For the same reason urged in support of his first point plaintiff claims that the trial court erred in giving Instruction No. 3, directing a verdict for defendants on their counterclaim upon a finding that plaintiff "drove" his automobile from the east half onto the west half of the highway. Having disposed of this contention adversely to plaintiff we need not repeat in connection with Instruction No. 3 what we have said with reference to Instruction No. 2.

Plaintiff further complains that Instruction No. 3 ignores the affirmative defense of contributory negligence set up in plaintiff's reply and fails to require a finding that defendant Hubert Hulsey was in the exercise of the highest degree of care in the operation of his tractor-trailer as a prerequisite to a recovery by defendants on their counterclaim. The instruction, however, requires a finding "that defendant Hubert Hulsey was not negligent in any respect submitted to you in other instructions herein." The only charge of contributory negligence submitted to the jury in Instruction No. 3 was that Hubert Hulsey

failed to drive the tractor-trailer as close to the right-hand side of the highway as practicable, and caused, allowed and permitted the unit to cross from the west to the east side of the pavement. Under Instruction No. 1 the jury, in order to return a verdict for plaintiff, was required to find that Hulsey drove his tractor-trailer from the west half to the east half of the highway, and that in so doing Hulsey "failed to exercise the highest degree of care and was guilty of negligence." Instruction No. 3 referred the jury to Instruction No. 1 and required the jury to decide whether Hulsey had committed the specific act which was the sole basis of the charge of contributory negligence and to determine whether his acts in that connection constituted a failure to exercise the highest degree of care. Instruction No. 1 thus supplied the element claimed by plaintiff to have been lacking in Instruction No. 3. Schlemmer v. McGee, Mo.Sup., 185 S.W. 2d 806.

■■ Finally, plaintiff makes the point that the court erred in changing the burden of proof instruction offered by defendants after it had been read to the jury and re-reading the instruction, thereby placing undue emphasis upon plaintiff's burden. By the first sentence of Instruction No. 4 as originally written and read the jury was instructed that the burden is on plaintiff to prove his case against defendants by a preponderance or greater weight of the credible evidence, "and that unless he has done so your verdict must be for the defendants." At the request of defendants' counsel, and over the objection of plaintiff's counsel, the court amended the instruction by adding the following to the above-quoted words: "on plaintiff's cause of action." After explaining that a mistake had been made in reading the instruction the court re-read it in its amended form. In Miller v. Williams, Mo.Sup., 76 S.W.2d 355, 357, cited by plaintiff, the court gave two instructions on the burden of proof and in the course of reversing the judgment for errors in a certain instruction, the writer of the opinion observed that the trial court "also unduly emphasized the burden of proof by giving two instructions on the subject." The Supreme Court in that case, however, did not intend to rule that the giving of two instructions on the burden of proof, without more, is reversible error. In State ex rel. Kansas City v. Shain, Mo.Sup., 177 S.W.2d 511, loc. cit. 513, the same division of the same court specifically renounced such an intention in that case. The repetition of the same proposition in several instructions is a matter within the sound discretion of the trial court and is generally held not to be reversible error where not so considered by the trial court. Reidinger v. Adams, Mo.Sup., 266 S.W.2d 610, loc. cit. 613, and cases cited. In Ford v. Dahl, 360 Mo. 437, 228 S.W.2d 800, 805, it was held that the giving of three instructions on the burden of proof was not sufficient to reverse the judgment and the proposition was reannounced that repetitious instructions will not effect a reversal unless it plainly appears that the instructions " 'were in fact calculated to confuse and mislead.' " We find no undue emphasis or violation of these rules in the instant situation.

No error appearing, the Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., and BENNICK, J., and IVAN LEE HOLT, Jr., Special Judge, concur.