**Norman A. GERMAN, Appellant,**

v.

**KANSAS CITY, Missouri, a Municipal Corporation, and Tri-City Construction Company, a Corporation, Respondents.**

**No. 56584.**

Supreme Court of Missouri,
Court en Banc.

June 24, 1974.

Rehearings Denied July 22, 1974.

David H. Clark, David K. Hardy, Kansas City, for appellant; Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

Aaron A. Wilson, City Counselor, Robert A. Dakopolos, Associate City Counselor, Joseph R. Hachey, Thomas C. Clark, Asst. City Counselors, Kansas City, for respondent, Kansas City, Missouri.

Lowell L. Knipmeyer, Douglas H. Delsemme, Knipmeyer, McCann, Fish & Smith, Kansas City, for respondent, Tri-City Const. Co., a corporation.

HIGGINS, Commissioner.

Appeal (taken prior to January 1, 1972) from judgment for defendants entered pursuant to a directed verdict at the close of plaintiff's evidence in his action for $100,000 damages for personal injuries and for $50,000 damages for wrongful death of his wife.

On January 20, 1968, plaintiff was driving his motor vehicle with his wife as a passenger when the vehicle collided head on with another vehicle near the crest of a hill on 63rd Street Trafficway, Kansas City, Missouri.

Plaintiff alleged: that certain construction work was being performed on the section of 63rd Street Trafficway in question and that the work consisted generally of

converting the street from a two-lane street with the northern lane carrying westbound traffic and the southern lane carrying eastbound traffic into a four-lane street with the two northernmost lanes carrying one-way westbound traffic and the two southernmost lanes carrying one-way eastbound traffic; that by contract with defendant Kansas City, defendant Tri-City was the general contractor engaged in and in charge of the construction work; that it was the duty of Tri-City to provide traffic controls, directions, warnings and safeguards for the motoring public traveling the street; that on and prior to January 20, 1968, construction had progressed to the point that all required additional paving had been completed, thereby creating a four-lane roadway upon which continuous one-way westbound travel in the two northernmost lanes and continuous one-way eastbound travel in the two southernmost lanes appeared to be and was possible; that defendant Tobin Construction Company (no longer a party) permitted travel by the motoring public in all four lanes with the two northernmost lanes carrying one-way westbound traffic and having signs, markings, and other devices so informing west bound motorists, and the two southernmost lanes carrying one-way eastbound traffic and having signs, markings, and other devices so informing eastbound motorists; that defendants Kansas City and Tri-City permitted travel by the motoring public in only the two northernmost lanes with the northernmost of those two lanes carrying westbound traffic and the lane immediately adjacent thereto carrying eastbound traffic, thereby changing the traffic routing in the lane immediately adjacent to the northernmost lane from westbound traffic to eastbound traffic; that defendants Kansas City and Tri-City knew or, in the exercise of ordinary care, should have known of such change in traffic routing and that it would create an unsafe and dangerous condition for westbound motorists unless reasonably adequate notice, warning, or indication of the condition was given; that

plaintiff was not given adequate notice, warning or indication of the change in traffic routing but instead was deceived, deluded, lulled, and misled into believing that westbound traffic in both the two northernmost lanes was permitted, whereupon he drove his automobile westerly in the lane immediately adjacent to the northernmost lane and as a direct and proximate result of defendants' negligence was caused to sustain a head-on collision with a vehicle being driven easterly in the same lane; that defendants "each negligently and carelessly failed to devise, construct, furnish, locate, emplace, maintain and keep unobscured such signs, signals, markings, barricades and other devices as were necessary to give westbound motorists such as plaintiff reasonably adequate notice, warning or indication of the change in traffic routing that had taken place; negligently and carelessly caused and allowed the pavement stripes and markings which were present to become obscured with mud, sand, and other debris and to remain in such condition; negligently and carelessly failed to supervise and control * * * Safe-T-Flare Corporation and Safe-T-Flare Rental Service Incorporated in their furnishing, emplacement and maintenance of barricade 'blinker' devices; and negligently and carelessly failed to coordinate with each other and with each of the other defendants [no longer parties to this action] and with the Missouri State Highway Department to provide the adequate notice, warning or indication of the aforesaid change in traffic routing."

Defendant Kansas City generally denied plaintiff's petition and pleaded defenses of contributory negligence and governmental immunity; defendant Tri-City generally denied the petition and pleaded contributory negligence.

For many years 63rd Street Trafficway was a two-way, two-lane street running generally east and west. Its paved width was 23 feet and there was a shoulder on each side of the payment. In 1966 defendant Kansas City contracted with defendant

Tri-City for the widening, paving, grading, and curbing of a section of 63rd Street, then a two-lane roadway, into a four-lane roadway, between the east end of the Blue River Bridge and the west right-of-way line of Interstate Highway 435. At the time of the accident the work had been completed to the extent that 63rd Street was a four-lane undivided roadway open to and used by the public over most of that portion of the project east of the accident scene. From a short distance east of the scene and to the west beyond the scene, the roadway was four lanes separated by a dividing median or center island. There was a crossover of the median between the scene and the west end of the project.

On January 20, 1968, plaintiff and his wife left their home in St. Louis at 6:00 a. m. for Kansas City and a weekend visit with plaintiff's brother. Plaintiff traveled west on Interstate Highway 70 to Blue Ridge Boulevard, drove south to 63rd Street, and proceeded west on 63rd over which he had not driven for eight to ten months. He had visited his brother on previous occasions upon which 63rd had been a two-way street with one lane in each direction. At the time of the accident, 10:00 a. m., the sky was overcast and there was a drizzle. Plaintiff's windshield and windows were clear, his lights were off, and his vision was unobscured. As he passed through the four-lane undivided section of 63rd Street, east of the accident scene, plaintiff traveled in the inside westbound lane, i. e., the lane next to the center line dividing the eastbound and westbound traffic lanes. He did not change lanes from the time he entered 63rd to the accident site. Plaintiff did not recall any signs along the north side of the street as he approached the median except a speed limit sign. Neither did he recall a double yellow line on the pavement east of the median strip. He did recall painted lines dividing the two westbound lanes from the two eastbound lanes on the four-lane roadway east of the median. As he approached the median and proceeded west to and be-

yond the east tip of the median, plaintiff noted a film of mud on the pavement and reduced his speed to 25 to 30 miles per hour from the approximately 35 miles per hour he had been traveling prior to that time. Plaintiff did not see any markings to indicate the road was changing from four to two lanes. He observed sawhorse barricades with light devices stacked at the median tip but saw no barricades blocking the lanes on either side of the median. He looked into his rear-view mirror when about one-eighth mile east of the median tip and noted an automobile behind him in the same lane. There was also a car in the outside lane to his right as he passed the median tip. At a point approximately halfway to the crest of the hill where the collision occurred, he again noticed a car three or four lengths to his rear in the same lane. As plaintiff reached the crest of the hill, an eastbound white car "popped over the hill" and swerved right to the shoulder of the median. Plaintiff turned to his right and, as the white car swerved to the median, he saw a pickup truck traveling easterly immediately behind the white car. Plaintiff applied his brakes and came into head-on collision with the truck.

Kenneth Small was traveling behind plaintiff in the lane to plaintiff's right. Don Small, Kenneth's brother, was traveling behind plaintiff in the same lane. They had entered 63rd Street at I-435 and proceeded west a few car lengths behind plaintiff. They were driving at 30 to 40 miles per hour and did not seem to gain or lose ground with respect to plaintiff. Both men were familiar with 63rd Street between I-435 and the Blue River Bridge.

Kenneth Small, traveling in the northernmost of the four undivided lanes, recalled a "Two Way Traffic" sign on the right shoulder near the median tip; it was "fairly dirty." He did not recall a diamond-shaped sign marked "1 Lane," or any other signs east of the median. Don Small, behind plaintiff and in the same lane, did not recall any traffic-directing signs on 63rd the morning of the accident.

Kenneth Small saw barricades on the median but none on the roadway; Don did not see any barricades. Both brothers, as they approached the median, saw eastbound traffic coming toward them on the south side of the median using the southernmost lanes. Neither recalled any lines painted on the roadway; both described the road as "dirty."

As plaintiff approached the crest of the hill, Kenneth Small saw the white car swerve to the shoulder, and a "split second" later plaintiff collided with the pickup. Don Small remained in the same lane with plaintiff until just prior to the collision and thought he was in a proper lane for westbound traffic. Don Small changed to the northernmost lane when he saw the white car appear on the shoulder near plaintiff's vehicle. Both brothers went alongside the collision to help and heard plaintiff say, "My God, I thought it was a one-way."

Joseph A. Nichols traveled 63rd Street frequently and was familiar with the area. At the time in question he was driving westerly in the northernmost lane and arrived at the scene moments after the collision. As Mr. Nichols neared the median tip, a motorist eastbound on the north side of the median diverted him to the south side of the median by flashing his lights. Mr. Nichols thought the man who flagged and diverted him left his car and barricaded the street, after which the police arrived. He also thought the lanes south of the median were for eastbound traffic because he saw traffic coming toward him in those lanes. Mr. Nichols proceeded cautiously into the south lanes and parked his automobile on the shoulder north of the two lanes south of the median. Mr. Nichols was asked whether he had observed eastbound traffic south of the median prior to January 20, 1968. Objection to the question was sustained, and plaintiff offered to prove that Mr. Nichols, if permitted to answer, would state he had observed eastbound traffic in the lanes south of the median within one week prior to the accident.

Mr. Nichols did not recall any signs along 63rd Street as he drove westerly except a square sign which was dirty. Neither did he recall any yellow lines on the pavement within two to three hundred feet of the median. He saw barricades on the median but none across any of the pavement lanes.

Patrolman Richard Weidemeyer of the Kansas City Police Department investigated the collision. When he arrived at the scene, two or three police officers were present. One officer was diverting traffic around the scene onto the new southern lanes at a crossover west of the scene; another was diverting traffic to the southern lanes at the tip of the median east of the scene. Patrolman Weidemeyer observed sawhorse barricades east of the scene on the median and also south of the paved portion of the roadway. He noted a double yellow line dividing the two southern lanes from the two northern lanes on the four-lane portion of 63rd east of the median tip. He noted also that the double yellow line curved northerly until it separated the two northerly lanes in the area of the median tip. The lines were partially obscured by mud, sand, and water: the line was "hard to see." Officer Weidemeyer observed only one road sign near the scene, a diagonal one-lane sign, thus: ◇ . It was "quite dirty." On the day following the accident, while driving home from church, he observed a rectangular sign on the north side of the roadway near the median tip. It bore the legend, "two-way traffic"; it was dirty. Officer Weidemeyer was asked whether he had observed eastbound traffic south of the median prior to January 20, 1968. Objection was sustained and plaintiff offered to prove that the officer, if permitted to answer, would state he had observed eastbound traffic in the lanes south of the median on December 31, 1967, and on January 7, 1968, and that there were no barricades across those two lanes. Patrolman Weidemeyer placed the accident scene about one hundred fifty to one hundred seventy-five feet west of the hill crest, and that there were one hundred

twenty-seven feet of skid marks behind plaintiff's vehicle. Both vehicles were in the southernmost of the two lanes north of the median. The officer estimated from tests made at the scene that plaintiff was traveling at 42.8 miles per hour at impact.

Plaintiff offered but was refused permission to read portions of the deposition of Ralph J. Blackmore, Vice President and General Superintendent of defendant Tri-City, as admissions that Tri-City had used power and hand brooms to clean the roadway in the area of the median tip and for three hundred feet to the east; that it was last done five or six weeks prior to January 20, 1968; and that the southern lanes were closed by Tri-City decision from and after November 28, 1967.

At the conclusion of this evidence, both defendants moved for directed verdicts alleging generally that plaintiff was contributorily negligent as a matter of law and that he failed to prove breach of any duty owed him by defendants. Defendant Kansas City also asserted the defense of governmental immunity. The motions were sustained without specification of grounds; the jury was directed to return a verdict for defendants, and judgment for defendants was entered accordingly.

The principal issues are whether plaintiff's evidence was sufficient to establish jury questions as to duty, breach and causation on the part of either defendant; and, if so, whether plaintiff was contributorily negligent as a matter of law.

Appellant contends that defendant Kansas City owed him the nondelegable duty to maintain its streets in reasonably safe condition for travel by the public; that Kansas City breached that duty by failing to provide and maintain adequate warning devices to indicate that the two traffic lanes north of the median strip were carrying both westbound and eastbound traffic, and that such negligence caused the collision in that plaintiff was deluded and misled into believing the inside northern lane was for westbound traffic.

Respondent Kansas City contends that plaintiff's allegations of breach relate directly to regulation and movement of traffic; that such is a governmental function, and that it, as a municipal corporation, is not liable in tort for negligence in connection with a governmental function. See Gillen v. City of St. Louis, 345 S.W.2d 69 (Mo.1961); Fette v. City of St. Louis, 366 S.W.2d 446 (Mo.1963); Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778 (Banc 1932); Carruthers v. City of St. Louis, 341 Mo. 1073, 111 S.W.2d 32 (1937); Blackburn v. City of St. Louis, 343 Mo. 301, 121 S.W.2d 727 (1938); Metz v. Kansas City, 229 Mo.App. 402, 81 S.W. 2d 462 (1935).

Defendant Kansas City admitted that the part of 63rd where the collision occurred was a public street within the corporate limits of the municipality of Kansas City, Missouri; and that a construction project was underway at that time and place. The City's duty to maintain 63rd Street in a reasonably safe condition for travel by the public was shown by the City's Charter, Section 1(16), which provides that the City "shall have power * * * to * * * clean within * * * the limits of the city * * * public highways, streets, boulevards, trafficways, parkways; * * * to have and exercise full, complete and exclusive control over the same, and regulate the use thereof, and to keep and maintain the same in an open, safe and clean condition * * *." Plaintiff, Mr. Nichols, Kenneth Small, and Don Small, who operated their motor vehicles over the area at the time and place in question, did not see any yellow lines to direct or divert them and other traffic from the four-lane undivided highway to the two northern lanes, one for westbound and one for eastbound traffic. Officer Weidemeyer, looking for traffic controls while afoot, did see such lines but described them as partially obscured with mud, sand, and water. Plaintiff and Don Small saw no road signs near the collision site; Kenneth Small and Mr. Nichols saw one sign which they described as dirty. Officer Weidemey-

er, in the course of his investigation, saw one sign which he described as dirty; he saw a second sign while driving through the area the following day, and it was dirty. Plaintiff, Kenneth Small, and Mr. Nichols observed barricades stacked on the median tip; they saw none across the southern lanes as they faced them while driving westerly; Don Small saw no barricades. The Small brothers also noted eastbound traffic in the lanes south of the median immediately prior to and at the time of the collision.

A jury reasonably could find from such evidence that 63rd Street in the area east of the collision site was inadequately marked to indictate to a westbound motorist that there was two-lane, two-way traffic on the lanes north of the median from its tip to the west; that the road signs were inadequate in number, condition, or location for such purpose; that the lane markings were obscured; that the southern lanes were not barricaded; and that all such created a misleading impression to a westbound motorist that the southern lanes were half of a divided highway open for travel by eastbound motorists.

◼ The controlling law with respect to the City's immunity from liability is stated, Myers v. City of Palmyra, 355 S. W.2d 17, 18–19 (Mo.1962): "In Missouri, as in most states, municipalities are not liable as a general rule for torts arising out of what is called governmental functions * * *. However, whether the construction, repair, and maintenance of streets be classified as a corporate or proprietary function, * * * or as a ministerial function, * * * or as governmental function for which there is an exception to the rule that a municipality is not liable for its torts, * * * under the law of this state 'it is the primary and non-delegable duty of the city to exercise ordinary care to keep its streets in a reasonably safe condition for travel,' * * * and to this activity the doctrine of immunity from liability for torts does not apply. The above

rule was developed in cases which arose out of situations wherein the plaintiff claimed to have been injured as the result of the municipality failing to keep the streets in a reasonably safe condition for travel. However, it is also well established that a city is liable for its torts arising out of the acts of its employees while engaged in constructing its streets, [or in maintaining and repairing the streets] to make them reasonably safe for travel. * * * Therefore, a city must act with due care, not only to keep the streets free from dangerous conditions but also in doing any act to repair them and maintain them open for traffic, and under the well-established law of Missouri it is liable for its torts resulting from activities done in carrying out these duties regardless of the name by which they may be called." And, as stated in Auslander v. City of St. Louis, supra, 56 S.W.2d l.c. 782: "There is a difference * * * between the physical condition of a street and its use by the public. The keeping of a street in a condition reasonably safe for travel thereon has reference to its physical condition, and is a different matter than the regulation of traffic on such street."

◼ This case falls within the stated exception to the governmental immunity doctrine.

Defendant Kansas City had established a four-lane public roadway over a portion of the area under construction and improvement contract between Kansas City and defendant Tri-City. Only the westerly part from the median tip to the west end of the project was limited to two-lane, two-way travel. As demonstrated, a jury reasonably could find Kansas City negligent in failing to mark adequately by signs, lane markings, barricades, etc., the transition from four lanes to two-lane, two-way traffic to warn motorists such as plaintiff traveling westerly into the area that the roadway was reduced from four lanes to two-lane, two-way traffic. Such negligence created a dangerous and deceptive

condition by which plaintiff was misled into collision and injury.

■ This determination that plaintiff made a case against defendant Kansas City utilizes the testimony of witnesses Weidemeyer and Nichols contained in plaintiff's offer of proof. Appellant contends such evidence was admissible on the issue of notice to defendants of the inadequacy of the barricades on the lanes south of the median. Respondent Kansas City supports the court's ruling urging that the offered but refused testimony does not fall within the exception to the general rule permitting testimony of a prior accident or existing condition. See Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, 566 (1937); Boyd v. Logan Jones Dry Goods Co., 340 Mo. 1100, 104 S.W.2d 348, 353 (1937).

Critical issues were whether the lanes south of the median appeared open and complete for eastbound traffic and, if so, whether such condition misled and deceived plaintiff into traveling a lane north of the median that was carrying eastbound traffic. The offered but refused testimony of Officer Weidemeyer and Mr. Nichols bore on defendants' knowledge that the barricades were susceptible to easy removal and that eastbound traffic had used the southern lanes previously. This testimony was not to show the use of the lanes by eastbound traffic and the position of the barricades at the time of the collision; witnesses Nichols, German, Kenneth Small, and Don Small supplied that evidence, i. e., that there were no barricades present in the southern lanes at the time of the collision. The situation is similar to the permitted use of evidence of pre-existing conditions in defective railroad signal cases on the issue of notice and knowledge, Willsie v. Thompson, 359 Mo. 775, 223 S.W.2d 458 (Banc 1949), and would have been properly admitted for such purpose in this case.

Thus, in these circumstances, defendant Kansas City had a duty, the City breached that duty, and plaintiff was injured by such breach. True, the collision occurred because plaintiff was in a wrong lane of traffic, but a jury reasonably could find he was there because defendant Kansas City negligently misled and deceived him to be there.

In addition to Myers v. City of Palmyra, supra, where the governmental immunity doctrine did not apply to the City's acts in removing snow from streets to make them passable, plaintiff has the support of several cases where plaintiff made a similar submissible case of negligence on the City's failure to barricade or warn in violation of its duty to keep its streets in a reasonably safe condition for travel, e. g.: Treon v. City of Hamilton, 363 S.W.2d 704, 708 (Mo.1963), failure to warn or barricade in view of the deceptive nature of the area, recent relocation of roadway, and continuance of blacktopped areas except for ditches; Williams v. City of Mexico, 224 Mo. App. 1224, 34 S.W.2d 992, 994 (1931), unbarricaded street led to a point near where a bridge had been removed so that plaintiff drove over a precipice; Chance v. City of St. Joseph, 195 Mo.App. 1, 190 S.W. 24, 26 (1916), city failed to erect barricade at end of street where appearance was deceptive and street ended at the crest of a "precipitous declivity"; Boyd v. Kansas City, 291 Mo. 622, 237 S.W. 1001, 1007 (Banc 1922), city held to have breached its duty to keep a roadway reasonably safe for travel in that it opened and maintained a bridge but did not light it adequately and plaintiff struck a girder located above the roadway; Metz v. Kansas City, supra, 81 S.W.2d l.c. 465, 466, city held negligent because it constructed and opened a public roadway and plaintiff struck unlighted curb of an island located in the center of an intersection.

Plaintiff's situation is also akin to that of plaintiff in Nimmo v. Perkinson Bros. Const. Co., 85 S.W.2d 98, 101 (Mo.1935). Plaintiff was injured when his car struck an excavation in a street under improvement contract between defendant City of St. Louis and defendant construction company. Plaintiff contended the excavation should have been lighted to warn of dan-

gerous conditions. Plaintiff appealed from an involuntary nonsuit and received a new trial on a submissible question whether the barricades and signal lights were down at the time and place in question and, if down, whether the city had timely notice to replace them prior to the incident. Equally persuasive from foreign jurisdiction is City of Austin v. Schmedes, 154 Tex. 416, 279 S.W.2d 326, 52 A.L.R.2d 680 (1955). Plaintiff Schmedes, while traveling north in the western lane of a two-lane, one-way, northbound roadway, collided head on near the crest of a hill with a vehicle traveling south also in the western lane. The second vehicle had entered the street at a point where it was a two-way street and, when he reached the point where the street consisted of two roadways divided by a parkway, he found the two western lanes to be barricaded, as was the only intersecting street at that point. There were no warning signs, and the motorist continued south, using the western lane on the east side of the parkway, into collision with plaintiff. The Supreme Court of Texas, in affirmance of plaintiff's judgment, held the city owed a duty to warn street users by signs "of immediate dangerous conditions, other than physical defects and obstructions, created by the city in the performance of its proprietary function of improving its streets * * *. The duty of a city to erect signs at the site of street improvements does not arise out of its police power to control and regulate traffic which it may perform negligently or not at all without risk of liability, but is imposed by law for the protection of the public against immediate dangers created in the performance of the proprietary function of maintaining and improving its streets. The fact that the performance of the duty requires an incidental regulation of traffic does not detract from the duty or change the character of the function which gave rise to the danger." 279 S.W.2d supra, l.c. 328, 330. Defendant City's citations previously recognized in connection with its contention are not in point because they deal with incidents arising from regulation or nonregulation of traffic, a governmental function for which it is not liable; and also c.f. Watson v. Kansas City, 499 S.W.2d 515, l.c. 518 (Mo. banc), where there was no construction or route changing, and holding that "the placing (or failure to place) of a sign on North Manchester to warn that the intersection in question was a T intersection is a form of traffic regulation, direction, or control, and hence a governmental function."

Appellant contends that defendant Tri-City negligently failed to erect and maintain adequate barricades across the lanes south of the median and failed to keep the roadway in a reasonably clean condition, thus creating the impression upon plaintiff as he reached the area of the median that 63rd Street, previously consisting of four undivided lanes, was becoming a divided highway with two lanes for westbound and two lanes for eastbound traffic; that Tri-City thus breached its duty to erect barricades and keep the street clean, and that such negligence caused the collision in that plaintiff was deluded and misled by the open appearance of the southern lanes and the absence of visible markings into thinking the northern lanes were for one-way westbound traffic.

Respondent Tri-City contends that plaintiff's evidence failed to create a jury question asserting he failed to establish that defendant owed plaintiff a duty to barricade and to keep the roadway clean; that he failed to show breach of any such duty, and that he failed to show the alleged negligence of defendant was the proximate cause of the collision.

■ The contract for construction on 63rd Street between Kansas City and Tri-City provided: "It is the intent of these specifications to provide the best possible traffic service to through-vehicle movements and to abutting properties and the contractor shall cooperate with those agencies responsible for traffic operations and shall provide and maintain such temporary roadway facilities, signs, flagmen, and barricades as become necessary in complying

with these specifications." Tri-City admitted renting light barricades from Safe-T-Flare Rental Service and placing them on the job site; and by the refused offer of proof via Mr. Blackmore's deposition, plaintiff would have shown that Tri-City made a decision to close the southern lanes of 63rd Street more than a month prior to the collision. These matters showed the assumed responsibility of Tri-City for providing barricades and its resultant duty to do so in a careful and adequate manner. See Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W.2d 35, 41 (1948).

The testimony of plaintiff, Mr. Nichols and Kenneth Small that Tri-City's barricades were stacked on the median tip reasonably permits the inference that Tri-City placed them there or permitted them to be moved from blocking the southern lanes. By such conduct it may be said that Tri-City breached its duty to supply adequate barricades, i. e., that Tri-City did not properly place them to provide warning that the southern lanes were closed or that they were subject to removal; and the offered but refused testimony showed constructive notice to Tri-City that the barricades had been moved on prior occasions.

Plaintiff's offered but refused testimony via Mr. Blackmore's deposition would have shown also Tri-City's assumption of a duty to keep the roadway reasonably clean and safe for travel in that Mr. Blackmore stated that Tri-City cleaned the roadway with power brooms in the area of the median tip and to the east five or six weeks before the collision. In this respect, see Grab v. Davis Const. Co., 233 Mo.App. 819, 109 S.W.2d 882, 887 (1937), where plaintiff recovered on evidence that the roadway was slippery due to mud defendant permitted to accumulate on the job site, same being a breach by defendant of its duty to use ordinary care to keep the highway safe for traffic. See also Eidson v. Dean Const. Co., 233 S.W.2d 820 (Mo.App.1950).

Tri-City argues that the collision occurred on that part of 63rd Street that encompassed "old" 63rd Street and that since that portion of the street was not a part of the contracted improvement, the accident occurred at a place over which Tri-City had no control. This argument overlooks the charge and evidence that Tri-City was negligent in failing to provide adequate barricades across the lanes south of the median, the very portion Tri-City contracted to construct. By such failure plaintiff was misled into driving into the south lane north of the median.

■ Tri-City also argues that plaintiff can have no benefits from Mr. Blackmore's deposition on the issues of control and knowledge because such evidence was not admitted. Appellant contends the court erred in denying his offers from the deposition of Mr. Blackmore, and that this court should consider such matters in determining whether plaintiff made his case.

When plaintiff offered to read from the deposition of Mr. Blackmore as admission by Tri-City, the trial court held "there is no showing that Mr. Blackmore is a managing officer, managing agent, of the corporation, of the defendant Tri-City, and is not therefore an individual having capacity to bind corporate defendant by statements made in deposition or any place else."

There is, as contended by Tri-City in support of the court's ruling, authority for the proposition that statements in a deposition by an individual are not binding upon his corporate employer as admissions against interest to prove negligence. See, e. g., Meyer v. Dubinsky Realty Co., 133 S.W.2d 1106, 1110 (Mo.App.1939); Kolb v. Howard Corp., 219 S.W.2d 856, 859 (Mo. App.1949). However, a different rule is applicable in this case and permits the admission of the testimony in question. Ralph J. Blackmore was Vice President and General Superintendent of Tri-City when he was deposed. He also signed answers to interrogatories directed to Tri-City which were in evidence. In his position as General Superintendent, he was in supervision of the 63rd Street project, and

he testified to the use of brooms to keep the area clean, and the decision to close the southern lanes. These statements bore on Tri-City's control over the cleaning and barricading and its knowledge of the conditions existing at the construction site and collision area. The situation is similar to that in Brown v. Kroger Co., 344 S.W.2d 80 (Mo.1961), where statements from the store manager's deposition were properly admitted to show defendant's knowledge of the danger involved in using wet soda cartons, and in Bowyer v. Te-Co, Inc., 310 S.W.2d 892, 895 (Mo.1958), where testimony by plaintiff that defendant's vice president had told him a stone slab upon which plaintiff slipped was in bad condition was properly admitted to show an admission by an executive officer of defendant of its prior knowledge of an existing condition and to show defendant's control over the offending condition. See also on the subject of depositions by corporate officers in the scope of authority and line of duty, Loyal's Auto Exchange v. Munch, 153 Neb. 628, 45 N.W.2d 913, 921 (1951), Kaufman v. Baden Ice Cream Mfgs., 7 S.W.2d 298 (Mo.App.1928), Winegar v. Chicago B. & Q. R. Co., 163 S.W.2d 357 (Mo.App. 1942); and note also Advisory Committee's Note (d)(1)(iv) to Rule 801(d), Proposed Rules of Evidence, 51 F.R.D. 315, 418 (March 1971): "The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement. Dissatisfaction with this loss of valuable and helpful evidence has been increasing. A substantial trend favors admitting statements related to a matter within the scope of the agency or employment."

■ Thus, in this case defendant Tri-City owed plaintiff the duties to barricade adequately the lanes south of the median and to keep the traffic lane markings clean and unobscured. A jury reasonably could find that Tri-City breached such duties by providing inadequate barricades which had been removed from the southern lanes and stacked on the median and by permitting the road markings to become obscured; and that plaintiff was injured by such breach in that he was deluded and misled by the open appearance of the southern lanes and the absence of visible road markings into driving into a wrong lane of traffic and head-on collision.

Whether plaintiff was guilty of contributory negligence is a jury question unless, from all the evidence and reasonable inferences favorable to plaintiff, the only reasonable conclusion is that he was negligent and such negligence was a proximate cause of his damage, Bowman v. Ryan, 343 S.W.2d 613, 618, 619 (Mo.App.1961), Brooks v. Stewart, 335 S.W.2d 104 (Mo.1960); and in determining the question, each case must be considered on the facts and circumstances peculiar to it, Moore v. Eden, 405 S.W.2d 910 (Mo.1966).

Respondents contend plaintiff was contributorily negligent as a matter of law: In failing to operate his motor vehicle upon the right half of the road in violation of Section 304.015, RSMo 1969, V.A.M.S., and Kansas City Rev. Ordinances, Ch. 34, Art. 21, Sec. 281, under Justice v. Malin, 336 S.W.2d 77, 79–80 (Mo.1960); Tener v. Hill, 394 S.W.2d 425, 431 (Mo.App.1965); Foster v. Sacco, 343 S.W.2d 171, 175–176 (Mo.App.1960); Wines v. Goodyear Tire and Rubber Co., 246 S.W.2d 525, 528 (Mo.App.1952); Rice v. Allen, 309 S.W.2d 629, 631 (Mo.1958); Downing v. Dixon, 313 S.W.2d 644, 650 (Mo.1958); Roach v. Lacho, 402 S.W.2d 344 (Mo.1966); Melber v. Yourtee, 203 S.W.2d 727 (Mo.1947); Bidleman v. Morrison Motor Freight, 273 S.W.2d 745 (Mo.App.1954); by failing to keep a lookout, particularly for traffic controls, under Rohmann v. City of Richmond Heights, 135 S.W.2d 378 (Mo.App.1940); Silvey v. Missouri Pacific Railroad Co., 445 S.W.2d 354, 360 (Mo.1969); Counsell v. Rickenbaugh, 431 S.W.2d 86 (Mo.1968),

and by exceeding the speed limit under Edwards v. Rudowicz, 368 S.W.2d 503 (Mo. App.1963), and, in the language of respondent Tri-City, he failed to sound a horn or warning, he did not apply his brakes, he did not go to the right lane, he would have collided with the white car had that driver not taken evasive action, he had no judgment how far away the white car was when he first saw it, he did not see the pickup truck until almost the instant of impact, he had no judgment of the speed of either vehicle, and no judgment of the distance separating the pickup truck and the white vehicle.

These contentions and the pleadings and evidence present alleged contributory negligence with respect to excessive speed, failure to keep lookout for and heed road signs and markings, driving in the wrong lane, and failure to take evasive action.

■ ■ On the issue of speed: Mr. German said he saw the 40-miles-per-hour speed limit sign east of the collision site at which time he was traveling approximately 35 miles per hour. As he approached the median tip and observed the film of mud on the pavement he reduced his speed to 25 to 30 miles per hour which he maintained to the time the white car "popped" into view. Kenneth and Don Small, following plaintiff, judged his speed at 30 to 40 miles per hour. All these estimates showed plaintiff's speed within the limit. Officer Weidemeyer estimated plaintiff's speed at 42.8 miles per hour, calculated from skid tests which he conducted; however, plaintiff was not bound and concluded by such estimate. Meier v. Moreland, 406 S.W.2d 97, 101[6] (Mo.1966). Accordingly, there was a jury issue on the issue of speed, and resolution of the conflicting testimony was for the jury. Pfefer v. Bachman, 386 S.W.2d 680, 683 (Mo.App.1964). Nor was there any evidence that at a slower speed the collision would not have occurred, and thus there was also a jury question whether plaintiff's speed was the proximate cause of his damage.

■ On the issue of failure to keep lookout for and heed road signs and markings: The evidence showed two traffic-directing signs on the north side of the roadway east of the collision site, one bearing the legend "1 Lane" and the other the legend "Two-Way Traffic." Officer Weidemeyer did not see the two-way traffic sign during his investigation and noticed it only upon a second visit to the scene, and it was dirty. Witnesses Nichols and Kenneth Small saw only one traffic sign near the scene and it was dirty. This was the same sign Officer Weidemeyer missed during his investigation on foot looking for signs. Witness Don Small did not recall any traffic-directing signs. Exhibits in evidence depicted the signs; and, although they established the existence, shape, content, and location of signs, they did not conclude plaintiff because there was yet a fact question of whether they were visible and adequate to warn motorists of existing conditions. See Phillips v. Stockman, 351 S.W.2d 464, 470 (Mo.App.1961); Burris v. Kansas City Public Service Co., 226 S.W.2d 743, 749 (Mo.App.1950).

Plaintiff, Mr. Nichols and the Smalls drove over the area of 63rd Street in question within a few seconds. Three of these witnesses thought the two lanes north of the median were one way for westbound traffic. Kenneth Small was familiar with the roadway and was unsure as to which lanes he should use. Thus it was for the jury to say whether plaintiff was negligent in his observation and reaction to the signs.

Plaintiff saw lines painted on the four-lane portion of 63rd Street east of the collision site, but saw no such lines in his lane or to his right as he neared the median tip. Officer Weidemeyer described a double yellow line at a point east of the median tip which divided the two southern lanes from the two northern lanes and then curved northward to divide the two northern lanes. He noted them in his investigation on foot, and also noted they were ob-

scured by mud and hard to see. The Small brothers and Mr. Nichols did not see any yellow lines near the median tip and they noted the dirty condition of the roadway. Thus, it was also for the jury to ˙ say whether plaintiff was negligent in failing to see and react to the painted yellow lines.

■ On the issue of driving in the wrong lane: There is no question that at the time of the collision plaintiff was driving westerly in a lane intended for eastbound traffic. However, it has been demonstrated that plaintiff made a submissible case on whether he was deluded, misled and deceived into driving in a lane he thought proper for westbound traffic; and thus it was for the jury to say whether plaintiff had a valid excuse for his violation. See Rice v. Allen, supra; Tener v. Hill, supra; Wines v. Goodyear Tire and Rubber Co., Inc., supra; and, by contrast and distinction, note that in Roach v. Lacho, supra, there was no allegation that the roadway was misleading and deceptive, and plaintiff was contributorily negligent because she knew she was on the wrong side of the road.

■ On the issue of failure to take evasive action; Plaintiff first saw the white car when it "popped" over the hill crest. It swerved to its right. Plaintiff attempted to pull to his right and did so an estimated three feet. Just as the white car swerved, plaintiff saw the pickup and applied his brakes and the collision followed. According to plaintiff, he did not have time to get into the right-hand lane. Kenneth Small described the collision as occurring a "split second" after the white car swerved. Plaintiff tried to get over to the right lane but did not have time. Thus, it was for the jury to say whether plaintiff was negligent in failing to avoid by a successful swerve, i. e., there was a jury question whether plaintiff had time to avoid, and, if so, whether he was contributorily negligent in failing so to do. Jones v. Hughey, *283 S.W.2d 550, 552* (Mo.

1955). The same may be said with respect to failure to honk or to stop.

Accordingly, the judgment is reversed and the cause is remanded for a new trial.

PER CURIAM:

The Division One Opinion by HIGGINS, C., is adopted as the opinion of the Court en Banc.

MORGAN and FINCH, JJ., concur.

SEILER, J., concurs in separate concurring opinion filed.

BARDGETT, J., concurs and concurs in separate concurring opinion of SEILER, J.

DONNELLY, C. J., and HENLEY, J., dissent.

HOLMAN, J., dissents in separate dissenting opinion filed.

SEILER, Judge (concurring).

I concur in the principal opinion, although I am unable to perceive any real distinction in principle between the city's failure in the present case to warn the westbound plaintiff that the lanes north of the median carried two-way traffic, and the city's failure to warn the plaintiff in Watson v. Kansas City, 499 S.W.2d 515 (Mo. banc 1973) that the street on which she was driving came to a dead end at a "T" intersection with a steep drop-off immediately beyond. Both cases involve serious injury to an automobile driver resulting directly from failure on the part of the city to erect appropriate warning signs, regardless of whether it is denominated traffic control or keeping the streets reasonably safe for travel. In my judgment, the view adopted in the present case is the more enlightened and sensible one and comports with the realities of what motorists have become accustomed to expect in the

way of warnings from those who have charge of the streets and highways over which they are driving.

Despite the bow which the principal opinion makes to the recent Watson decision, supra, I agree with Judge Holman that the two are in direct conflict.

HOLMAN, Judge (dissenting).

I respectfully dissent for the following reasons:

### Governmental Immunity

All of the acts complained of by plaintiff concern failure to adequately warn a westbound motorist that the lanes north of the median carried two-way traffic. This being clearly in the area of traffic control, the doctrine of governmental immunity would apply and the city could not be held liable. The decision in the principal opinion is in direct conflict with our en Banc decision in Watson v. Kansas City, Missouri, No. 56,432, decided September 12, 1973.

### Contributory Negligence

It is my view that plaintiff was guilty of contributory negligence as a matter of law. This (among other reasons) because he was in clear violation of § 304.015 RSMo 1969, V.A.M.S., since he was admittedly driving on the left half of the roadway. The statutory provision in effect at the time of this occurrence reads as follows:

"2. Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.026 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by markings or signs for one-way traffic."

None of the four exceptions in the statute appear here. Nor does it appear that plaintiff drove from the right to the left half of the road in avoiding an emergency situation. It is elementary that the violation of a statute such as 304.015 is negligence per se, i. e., negligence as a matter of law.

Plaintiff intended to drive his car in the lane where the collision occurred. His only excuse was that he did not know that said lane constituted the left half of a two-lane road designated for two-way traffic. That is not a lawful excuse. The statute comes in the classification of *malum prohibitum,* and criminal knowledge or intent is not an essential element thereof. It has been said that "[I]n order to establish legal responsibility for failing to drive and operate an automobile as close as practicable to the right-hand side of the highway in that the automobile crossed onto the wrong side it is not necessary to show that the offender intended to drive across the center line * * *. It is sufficient to show that while in charge of and operating the automobile he committed an act of negligence which resulted in the automobile not continuing in its proper lane, but crossing over and onto the wrong lane." Wood v. Hulsey, 271 S.W.2d 218, 221 (Mo.App. 1954).

For the reasons indicated I would affirm the judgment.