Andrew C. GONZALES, individually and Andrew C. Gonzales, father and natural guardian of Andrew Gonzales, Jr., and Andrew J. Heinisch, his minor children, Respondent,

v.

Mary Ella HOLLINS, Defendant,

Metro Square Lounge, Inc., d.b.a. P.J. Clark's, Appellant,

City of St. Paul, Respondent.

No. C7–85–2170.

Court of Appeals of Minnesota.

May 20, 1986.

Gary Stoneking, Minneapolis, for Andrew C. Gonzales.

Timothy W. Waldeck, Minneapolis, for Metro Square Lounge, Inc., d.b.a. P.J. Clark's.

Edward P. Starr, City Atty., Dianne A. Ward, Asst. City Atty., Saint Paul, for City of St. Paul.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and NIERENGARTEN, JJ.

## OPINION

FOLEY, Judge.

Metro Square Lounge, Inc., doing business as P.J. Clark's, appeals from the entry of summary judgment against it. Andrew Gonzales brought this suit against Mary Ella Hollins, Metro Square and the City of St. Paul. Suit was brought against the City on the basis of failure to supply and maintain appropriate traffic control devices at the intersection of Dale Street and Marshall Avenue. The City cross-claimed against Hollins and Metro Square, alleging negligence. A district court judge ordered judgment in favor of the City based on its ruling that the City is immune from suit for its choice of traffic control devices. The trial court certified that there is no just reason for delay in entry of judgment and judgment was entered accordingly. No brief has been filed by Gonzales. We affirm.

## FACTS

This appeal arose out of a car accident on October 31, 1983. Gonzales was driving north on Dale Street, a four-lane, through street located in St. Paul. He continued through the intersection at Marshall Avenue since there were no traffic control devices controlling northbound traffic on Dale Street at that time.

At the same time, Mary Ella Hollins was driving her car westbound on Marshall, a one-way street. On October 31, 1983, westbound traffic on Marshall at Dale was controlled by a stop sign, with an additional sign informing drivers on Marshall that "cross traffic does not stop." The intersection is in a residential neighborhood. Hollins failed to stop for the stop sign at Marshall and Dale and continued through the intersection, striking Gonzales' car and injuring Gonzales.

Apparently Hollins thought there was a semaphore at the intersection. She stated to a police officer investigating the accident that she had tried to time the light, thinking it would change, and when it did not, she went through it anyway. Hollins also told the officer that prior to the accident she had been drinking at P.J. Clark's in downtown St. Paul for several hours.

Until June 10, 1983, traffic at Dale and Marshall had been electronically controlled by semaphores. Prior to that date, a decision had been made by City Traffic Engineer Robert Roettgers to replace the semaphores with stop signs for traffic on Marshall. He stated in an affidavit accompanying the City's motion that:

> 2. In 1983, the Department of Public Works decided to turn off the traffic semaphore at Dale and Marshall. This was part of a program which involved 20 intersections in 1982 and 20 more in 1983. These semaphores were shut off to save money needed because of budget cuts. The Dale-Marshall semaphore was 1 of 20 shut off in 1983. The 20 sema-

phores which were shut off were chosen because of declining traffic volumes at the affected intersection.

On May 22, 1983, the semaphore was put on flashing operation to test the decision to remove the lights. The result was no increase in accidents, so on June 9, 1983, the flashing operation was terminated and stop signs were placed on Marshall and Dale.

On August 10, 1983, parking was banned for 150 feet on the east side of Dale, south of the intersection to improve visibility. Signs were added to the stop sign stating "Cross traffic does not stop."

At the time of the Hollins-Gonzales accident, the stop sign had been in place for almost five months.[1] The semaphores were turned back on at a later date in response to a request from the District 8 Planning Council.

## ISSUES

1. Is the City's act of changing traffic control devices from semaphores to a stop sign and through street configuration an exercise of discretion entitling the City to immunity from suit under Minn.Stat. § 466.03, subd. 6?

2. Do material fact issues exist here so that the grant of summary judgment was improper?

## ANALYSIS

1. Municipalities are immune from "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1982). The purpose of immunity for discretionary acts is that courts are not an appropriate forum to review and second-guess the acts of government which involve the exercise of judgment or discretion. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982).

---

1. The photographs of the stop sign taken by police officer Johnston on the night of October 31, 1983, shortly after the accident, clearly establishes a stationary stop sign and a covered semaphore. The affidavit of Karen Swanton is too insubstantial and vague to create a fact issue for trial relative to the semaphore.

■ Because it is an exception to the rule of tort liability, discretionary immunity must be narrowly construed. *Id.* The test is whether an act is a planning decision or is merely "operational." *Robinson v. Hollatz,* 374 N.W.2d 300, 302 (Minn.Ct.App. 1985). Decisions made on the executive, planning level of government are discretionary acts. *Hansen v. City of St. Paul,* 298 Minn. 205, 211–12, 214 N.W.2d 346, 350 (1974). A planning decision is one that involves the balancing of complex and competing factors comprising a discretionary choice between alternatives. *Cairl,* 323 N.W.2d at 23–24.

■ Operational acts, for which there is no immunity, consist of conduct which merely puts into effect a predetermined plan. *See Hansen,* 298 Minn. at 211–12, 214 N.W.2d at 350. *See also Dahelite v. United States,* 346 U.S. 15, 35, 73 S.Ct. 956, 967–968, 97 L.Ed. 1427 (1953) (interpreting federal Federal Tort Claims Act upon which Minnesota based Minn.Stat. § 466.03, subd. 6).

■ Metro Square claims that the City's replacement of the semaphore with a stop sign was an operational act because the City failed to *maintain* proper warning signs at the intersection. Metro Square's argument is based solely on *Ostendorf v. Kenyon,* 347 N.W.2d 834 (Minn.Ct.App. 1984). Under *Ostendorf,* this is a discretionary act only if the City did not have knowledge of a dangerous condition at the time of the accident. *Id.* at 838.

Metro Square claims that notice can be implied because the City later turned the semaphores back on. The City counters that it had no notice of a dangerous situation; the change in traffic control devices was the result of satisfactory experimental results and the City continued to monitor the situation. The City points out that there is no evidence in the record showing that the City had knowledge that the intersection was dangerous.

This case is more like *Bjorkquist v. City of Robbinsdale,* 352 N.W.2d 817 (Minn.Ct. App. 1984), *pet. for rev. denied,* (Minn.

Nov. 9, 1984). In *Bjorkquist,* the plaintiff alleged the city negligently timed certain semaphores, allowing insufficient time for pedestrians to cross. *Id.* at 818. We held that the timing of a semaphore was a discretionary act exempt from tort liability. *Id.* at 819.

There is no proof that the City had knowledge of a dangerous condition here. Accordingly, the trial court's ruling that the City's decision to replace the traffic control devices was discretionary is affirmed.

■ 2. Clearly, the City is entitled to summary judgment. As the non-moving party, Metro Square had to establish material fact issues. *See Ahlm v. Rooney,* 274 Minn. 259, 262–63, 143 N.W.2d 65, 68 (1966). Metro Square argues that it raised material fact issues in its pleading that the City failed to "supply and maintain appropriate traffic control devices at the intersection of Dale Street and Marshall Avenue."

Because discretionary immunity was raised as a defense, Metro Square's allegation of negligence is a legal, not factual, question. *See Robinson,* 374 N.W.2d at 302; *see also Illinois Farmers Insurance Co. v. Tapemark Co.,* 273 N.W.2d 630, 633–34 (Minn. 1978) (negligence, although normally a fact question, is susceptible to summary adjudication where the material fact issues are undisputed and as a matter of law compel only one conclusion). Additionally, when affidavits are submitted in support of a motion for summary judgment, the non-moving party cannot simply rely upon pleadings to defeat the motion. *Eakman v. Brutger,* 285 N.W.2d 95, 97 (Minn. 1979). The non-moving party must present specific facts showing there is an issue for trial. *Id.*

For Metro Square to prevail in this case, it should have presented evidence showing the City had notice of prior accidents. Since no evidence was presented, Metro Square failed to meet its burden to show material fact issues for trial.

## DECISION

The City's decision to replace the semaphore with a stop sign and through street configuration was the result of a planning decision made after balancing various factors including safety testing, traffic patterns and budget concerns. Absent proof that the City had notice of a dangerous condition, the act was discretionary. No material fact issue was raised because Metro Square failed to present evidence that the City had notice of a prior history of accidents.

Affirmed.