Ralph S. NUSBAUM, Appellant,

v.

COUNTY OF BLUE EARTH and State of Minnesota, Respondents.

No. C3–87–338.

Court of Appeals of Minnesota.

Sept. 15, 1987.

Bailey W. Blethen, Blethen, Gage & Krause, Mankato, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Brad P. Engdahl, Michael B. Miller, Sp. Asst. Attys. Gen., St. Paul, for respondents.

Heard, considered and decided by CRIPPEN, P.J., and LESLIE and LOMMEN, JJ.[*]

## OPINION

A. PAUL LOMMEN, Acting Judge.

Appellant Ralph S. Nusbaum brought suit against Blue Earth County and the State of Minnesota to recover for injuries he suffered in a one-car accident allegedly caused by a failure to warn of a dangerous condition on the highway. Nusbaum and the county entered into a Pierringer release. The trial court granted the state's motion for summary judgment, holding that the state was entitled to sovereign immunity for its discretionary act of establishing speed zones. On appeal, Nusbaum argues discretionary immunity is inapplicable. Nusbaum also argues any discretion the state had was exhausted by the state's knowledge of the danger. Finally, Nusbaum argues that granting immunity in this case would not serve the purpose of the discretionary immunity exemption from liability. We reverse and remand for trial.

## FACTS

On August 2, 1983, at approximately 10:00 p.m., appellant was driving north on

---

[*] Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

County State Aid Highway (CSAH) No. 48 in Blue Earth County. Just prior to the accident, appellant was driving in an area with a posted speed limit of 45 miles per hour. This is a reduced speed limit from the 55 mile per hour speed limit in the area immediately preceding the reduced speed zone. The reduced speed zone is a winding, curvy section of road. About 300 to 400 yards south of the accident scene, a sign reading "End 45 M.P.H. Speed" marks the end of the reduced speed zone. The road straightens out at the sign, runs straight for about 400 yards, then abruptly curves sharply.

When appellant reached the "End 45 M.P.H. Speed" sign, he accelerated to 55 miles per hour. As he crested a slight hill, he saw the abrupt turn and failed to negotiate it. Appellant claims the curve is not visible at night. He crashed into the right ditch, was thrown from his car and pinned beneath it, suffering serious injuries which resulted in paraplegia.

Appellant sued Blue Earth County and the state, claiming both were negligent. The claim against the county was that it failed to construct and maintain CSAH 48 properly, and negligently failed to warn of the sharp curve. Nusbaum's claims against the state related to the location of the reduced speed zone and the signs that marked it. He claimed the "End 45 M.P.H. Speed" sign led him to believe the road following the sign could be safely traveled at a greater speed, when, appellant alleges, the curve is not safe at any speed over 40 miles per hour.

The state claimed it was entitled to discretionary immunity pursuant to Minn.Stat. § 3.736, subd. 3(b) (1984) for its actions relating to the establishment of a regulatory speed limit on a county road, and moved for summary judgment. The state submitted an affidavit from District Traffic Engineer Jerry L. Miller who stated the Minnesota Department of Transportation had received no complaints relating to the authorization of placement of the speed zone signs or the curve. Miller stated only two accidents had occurred between the establishment of the speed zone in 1981 and appellant's accident in 1983, and neither was related to the accident curve. Appellant did not submit an opposing affidavit.

The trial court granted the state's motion, concluding the state's actions in authorizing the speed zone were discretionary acts. The court further held appellant had produced no evidence to raise an issue as to the state's notice of a dangerous condition created by its sign placement.

## ISSUES

1. Did the trial court err in determining that the State of Minnesota was entitled to discretionary immunity for its actions in establishing a regulatory speed limit zone?

2. Did the trial court err in determining that the state had no notice of a dangerous condition which would preclude application of the doctrine of discretionary immunity?

3. If the trial court erred in according the state discretionary immunity, was the error harmless?

## ANALYSIS

The discretionary act exception to governmental liability is codified at Minn.Stat. § 3.736 (1984). Section 3.736, subd. 1 provides:

> The state will pay compensation for injury to or loss of property or personal injury or death caused by an act or omission of any employee of the state while acting within the scope of his office or employment under circumstances where the state, if a private person, would be liable to the claimant.

Minn.Stat. § 3.736, subd. 1.

This provision is limited by subd. 3(b) which provides that the state and its employees are not liable for "[a]ny loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 3.736, subd. 3(b).

In determining whether discretionary immunity is applicable, the trial court must first determine whether the act complained of is a discretionary or a ministerial act. A ministerial act subjects the state to tort liability, whereas discretionary acts are immune. The Minnesota Supreme Court has noted that characterizing conduct as ministerial or discretionary is not an easy task, because the distinction is a nebulous and difficult one. *Williamson v. Cain*, 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976). Discretionary immunity is applied according to the "nature, quality and complexity" of the governmental decision at issue. *Id.* The supreme court has adopted the planning-operational distinction as a guide. *Larson v. Independent School District No. 314*, 289 N.W.2d 112, 120 (Minn.1979). Thus, discretionary immunity applies when a decision "involves the balancing of complex and competing factors comprising a 'discretionary choice between alternatives.'" *Cairl v. State*, 323 N.W.2d 20, 23-4 (Minn.1982) (quoting *Larson*, 289 N.W.2d at 120).

As noted by respondent, although this balancing of complex alternatives often occurs at the planning level, *see Larson*, 289 N.W.2d at 120, it may occur at the "operational" level as well. The *Cairl* court stated:

> [The distinction between planning and operational] cannot be dispositive, for that would invite a 'mere labeling approach' that is often conclusory. We continue, therefore, to examine the nature of the governmental act complained of in light of the planning-operational distinction.

*Id.* at 23 n. 2. (citations omitted).

A ministerial act subject to tort liability consists of conduct which merely puts into effect a predetermined plan. The act is one which is absolute, certain, and imperative, involving merely execution of a specific duty arising from fixed and designated facts. *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937).

The parties agree that the state has exclusive authority to designate speed zones, Minn.Stat. § 169.06, subd. 5 (1986), and in doing so, follows the Federal Manual on Uniform Traffic Control Devices (MUTCD) and the Minnesota Traffic and Engineering Manual (TEM). The state authorized the installation of the disputed sign on October 5, 1981 after receiving a request from Blue Earth County in June of 1981. The county had requested the state to authorize a reduced speed zone on CSAH 48 running from approximately 500 feet south of Buckmeister Bridge in LeRay Township, north to the Saltzman's Resort driveway.

In determining whether to alter the speed limit as requested by the county, the state investigates the site and is governed by the following criteria which are contained in the MUTCD:

> In order to determine the proper numerical value for a speed zone on the basis of an engineering and traffic investigation the following factors should be considered:
>
> 1. Road surface characteristics, shoulder condition, grade, alignment and sight distance.
>
> 2. The 85–percentile speed and pace speed.
>
> 3. Roadside development and culture, and roadside friction.
>
> 4. Safe speed for curves or hazardous locations within the zone.
>
> 5. Parking practices and pedestrian activity.
>
> 6. Reported accident experience for a recent 12–month period.
>
> \* \* \* \* \* \*
>
> *At the end of the section to which a speed limit applies, a Speed Limit sign showing the next speed limit shall be erected.*

Federal Highway Administration, U.S. Department of Transportation, Manual on Uniform Traffic Control Devices, 2B–10, 13 (1978) (emphasis added.)

The TEM provides:

> The following procedures should be used for speed zoning on county roads or other local roads:
>
> \* \* \* \* \* \*

d. The District Traffic Engineer shall make the field investigation and prepare recommendations. These recommendations may include suggestions for installing warning signs and other traffic control devices, as well as the recommended speed limit. These recommendations should be discussed with the local authority shortly after completion of the investigation. The local authority should be furnished with a copy of the investigation results, where pertinent, so that he may implement suggested warning signs or other traffic control devices.

e. The District Traffic Engineer shall submit his recommendations to the State Traffic Engineer for review. The State Traffic Engineer shall then prepare a formal authorization for the approved speed limits. This authorization shall be limited to speed zoning only, and shall be signed by the State Traffic Engineer. Suggestions on warning signs and other traffic control devices may be made directly by the District Traffic Engineer.

Bureau of Operations, Minnesota Department of Transportation, Minnesota Traffic Engineering Manual, X.A.4.d, e (1977).

Appellant argues that the establishment of the boundaries of the reduced speed zone occurred at the operational or ministerial level of government and, therefore, cannot be characterized as discretionary. Appellant concedes that preparing the TEM and the MUTCD are discretionary acts, but claims that when state employees are locating the boundaries of a specific speed zone they are simply executing the tasks defined in the manuals and are acting at the operational level. Hence, their actions are not entitled to immunity.

Respondent claims that the signing of highways is entitled to discretionary immunity because it involves balancing competing considerations of safety and allocation of scarce funding resources, citing *Gonzales v. Hollins*, 386 N.W.2d 842 (Minn.Ct. App.1986). In *Gonzales*, the city of St. Paul had replaced a semaphore with a stop sign and through street configuration.

The appellant was involved in an accident at this intersection, and claimed that the city was negligent in maintaining proper warning signs. This court held:

The City's decision to replace the semaphore * * * was the result of a planning decision made after balancing various factors including safety testing, traffic patterns and budget concern. Absent proof that the city had notice of a dangerous condition, the act was discretionary. No material fact issue was raised because Metro Square failed to present evidence that the city had notice of a prior history of accidents.

*Id.* at 846.

In this case, as in *Gonzales*, the state authorized the speed limit signs as a result of a planning decision based on several factors, as is clearly evidenced by the MUTCD and TEM. This action was therefore a discretionary act and entitled to discretionary immunity.

2. Respondent claims that appellant had to establish notice on the part of the state by showing that it had knowledge of a history of accidents substantially similar to appellant's accident which could be attributable to the same problem. *See Ostendorf v. Kenyon*, 347 N.W.2d 834, 838 (Minn.Ct.App.1984) (appellants raised an issue of material fact as to whether state was negligent in maintaining highway by introducing evidence that highway had a history of accidents).

■ In a recent case, however, this court stated the general rule that a duty to warn arises only if the state has actual knowledge or constructive notice of alleged roadway defects or dangerous conditions is inapplicable if the "defect * * * is one which [the state] created." *Holmquist v. State*, 409 N.W.2d 243 (Minn.Ct.App.1987), (quoting *Larson v. Township of New Haven, Olmsted County*, 282 Minn. 447, 454, 165 N.W.2d 543, 547 (1969)). In *Holmquist*, appellant was injured when he attempted to pull his truck off the highway onto a narrow shoulder. The truck's tires caught

on the edge of the pavement, causing the truck to roll down a steep embankment. Appellant claimed that the state created a dangerous condition by narrowing the shoulder with a three to five inch drop at its edge, giving rise to a duty to install appropriate warning signs.

In determining that summary judgment had been improperly awarded to respondent state, this court stated:

> The rule which has emerged from our decision is "that if, by reason of peculiar facts or circumstances, a pitfall, trap, or snare dangerous to a traveler proceeding with reasonable care is created in respect to a street, a municipality owes a duty to exercise reasonable care to warn or otherwise protect such traveler from the resulting danger." *Mix v. City of Minneapolis*, 219 Minn. 389, 395, 18 N.W.2d 130, 132 [1945].

*Id.* at 247 (quoting *Larson*, 282 Minn. at 452, 165 N.W.2d at 546).

Appellant claims that the state created the danger by (1) placing the "End 45 MPH Speed" sign at an improper location, (2) failing to authorize the placement of a speed limit sign establishing the new speed limit, and (3) failing to recommend that the county install advisory signs warning of the blind curve.

Respondent counters that if appellant's argument were accepted, the state would forfeit its discretionary immunity in every case where it placed a sign, because it will *always* have created the danger which allegedly caused the accident. Thus, respondent states that the discretionary immunity granted in Minn.Stat. § 3.736, subd. 3(b) would be swallowed up by the exception appellant proposes. However, this case and *Holmquist* deal only with the situation where there is evidence of the creation of a trap dangerous to a traveler proceeding with reasonable care.

■ Respondent further argues that since it submitted an affidavit by Miller establishing the state did not have notice of a dangerous condition caused by the placement of the sign, appellant could not rest on his pleadings, but had to present specific facts showing notice to the state, *i.e.*, a history of accidents. *See Gonzales*, 386 N.W.2d at 845 (summary judgment was properly granted where appellant, in response to affidavit supporting motion, presented no evidence of prior accidents to raise an issue of material fact as to whether city negligently supplied and maintained traffic control devices). However, the state's affidavit dealt only with accident history, not whether the state had created a dangerous condition. Since this court has determined that in a case in which appellant alleges the state created the danger, notice is a fact issue, this argument is without merit.

3. Respondent claims even if the trial court improperly accorded it discretionary immunity, the error was harmless because the state did not owe appellant a duty to extend the speed limit zone farther north to include the accident area, or to inspect the advisory signing outside of the speed zone which it established. As respondent correctly states, an omission constitutes negligence only when there is a duty to act affirmatively. *Ruberg v. Skelly Oil Co.*, 297 N.W.2d 746, 750 (Minn.1980). Here, the claimed negligence went beyond an "omission"; it created a trap through the placement of the "End 45 M.P.H. Speed" zone sign.

Respondent notes the county had requested the state to terminate the northbound speed zone at Saltzman's Resort. The state claims the purpose of the county's request for a reduced speed zone was to limit traffic speeds to protect pedestrians crossing the highway. The state extended the reduced speed limit zone to include the entrance to Bray Park, allegedly because of the park's generation of pedestrian traffic. Respondent claims there was no need to extend the 45 m.p.h. speed zone farther north because the pedestrian traffic moved *south* from Bray Park. Thus, respondent claims it had no duty to appellant to extend the 45 m.p.h. speed limit farther north.

Yet, the resolution by Blue Earth County does not so limit the purpose for which the speed limit was sought. The Resolution requests the Commissioner of the Minnesota Department of Transportation, upon the basis of an *engineering and traffic investigation, to determine the reasonable and safe speed limits* and to authorize the erection of *appropriate* signs on CSAH 48.

## DECISION

In light of *Holmquist,* this case is remanded for trial to determine whether the state created a dangerous condition giving rise to a duty to warn.

Remanded.